IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MNS WIND COMPANY, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | CASE NO. 04-1569C<br><br>(Judge Marian Blank Horn) |

## MOTION TO DISQUALIFY

Plaintiff, MNS Wind Company LLC ("MNS"), through its undersigned counsel, hereby respectfully requests, pursuant to 28 U.S.C. section 455(a), that Judge Horn disqualify herself from these proceedings. MNS makes this motion only after much thoughtful deliberation and with all due respect to the Court. However, as more fully discussed below, the credibility of a key Government witness, Kathy Carlson, may be critical in resolving certain important issues in this litigation. MNS believes that, due to Judge Horn's prior, social relationship with and personal regard for Ms. Carlson, Judge Horn's impartiality in this matter might reasonably be questioned. In such a situation, MNS believes that disqualification is required under the statute.

## BACKGROUND

On October 15, 2004, MNS filed this action against the United States alleging three causes of action. *See* Declaration of Bryant S. Delgadillo in Support of Motion to Disqualify (hereinafter "Delgadillo Decl.'), at ¶1.[1] One of the central issues in this litigation is whether the United States improperly terminated a wind farm project with MNS without paying MNS the compensation required under the provision of the agreement that specifically permitted

---

[1] MNS's Complaint is attached as Exhibit 1 to the Delgadillo Declaration.

termination for national security reasons, but required compensation through application of eminent domain. *See* Delgadillo Decl. at ¶3; Exhibit A to MNS's complaint (the Grant of Easement for Wind Powered Electric Facility) (hereinafter "Easement") at Part II - page 3, ¶E(1). To the contrary, the Government maintains that it had the right under the agreements to unilaterally terminate, for national security reasons, the environmental review process required for this development, and thereby avoid compensating MNS for the development of the project. *See* Delgadillo Decl. ¶4; Ex. E to MNS's Complaint. Because this dispute involves, among other things, the interpretation of the agreements between the parties, the intent of the parties as expressed in the agreements will be placed at issue before the Court. Delgadillo Decl. at ¶4. As a result, the Court may be required to assess and weigh the credibility of witnesses involved in both the contracting process and the termination of the project.

Based on MNS's complaint, it is evident that one Government witness in particular -- Kathy Carlson -- played a major role in both these areas. First, Ms. Carlson signed the Easement -- the operative document in this matter -- on behalf of the Government. *See* Delgadillo Decl. at ¶5; Ex. A to MNS's Complaint at Part I - page 5. Second, Ms. Carlson also signed the letter terminating the wind farm project. *See* Delgadillo Decl. at ¶5; Ex. E to MNS's Complaint. Ms. Carlson's understanding regarding the Government's obligations and duties under the Easement, and reasons for terminating the Easement, will likely be material issues in these proceedings. Thus, Ms. Carlson's credibility is likely to be at issue in this matter.

The Court was concerned enough about Ms. Carlson's potential involvement in this matter, and the potential appearance of impartiality, that the Court arranged for a conference call with the parties to disclose the Court's prior, social relationship with Ms. Carlson. *Id.* at ¶6. During a brief conference call with the parties on November 11, 2004, the Court disclosed to the

parties that she had met Ms. Carlson socially through the Judge's husband's prior business dealings. *Id.* at ¶6. The Court specifically described Ms. Carlson as "a lovely and educated lady." *Id.* at ¶6.

Counsel for MNS did not know the nature of the Court's conference call before it occurred, and with only a few minutes to contemplate the issue, counsel for MNS consented to Judge Horn's continued handling of this matter. *Id.* at ¶7. However, upon further reflection, MNS respectfully requests that the Court disqualify herself from these proceedings. MNS believes that the Court's personal regard for Ms. Carlson and prior social relationship may reasonably impact the Judge's impartiality in this matter, particularly, the Court's assessment of Ms. Carlson's credibility regarding key issues in this case.

## ARGUMENT

Disqualification of a judge is governed by 28 U.S.C. section 455. Section 455 is made applicable to proceedings before the United States Court of Federal Claims by 28 U.S.C. section 460. Section 455 provides:

> (a) Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. §455(a). "The very purpose of section 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865 (1998). Moreover, "Section 455 does away with the old 'duty to sit' doctrine and requires judges to resolve any doubts they may have in favor of disqualification." *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989) (*citing United States v. Alabama*, 828 F.2d 1532, 1540 (11th Cir. 1987), *cert. denied*, 487 U.S. 1210 (1988)).

A judge contemplating recusal should not ask whether she believes she is capable of impartially presiding over the case, but rather section 455(a) establishes an objective standard for disqualification of a judge; thus a moving party is required to show evidence that "would convince a reasonable man that bias exists." *See Parrish v Board of Comm'rs*, 524 F.2d 98, 100 (5th Cir. 1975), *cert denied*, 425 US 944 (1976); *see also United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998) (adopting reasonable person standard); *In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998) (same); *Baldwin Hardware Corp. v. Franksu Enter. Corp.*, 78 F.3d 550, 557 (Fed. Cir. 1996) (same).

Here, MNS respectfully submits that the Court's prior relationship with and personal regard for Ms. Carlson would convince a reasonable person that a potential bias may exist. This potential bias would be particularly prejudicial in this case because Ms. Carlson's credibility will be important in assessing the Government's main arguments and positions in this case.

First, as the Court recognized, Ms. Carlson will likely be an important witness in this case. Ms. Carlson not only signed the Easement on behalf of the Government, *see* Ex. A to MNS Complaint at Part I - page 5; Delgadillo Decl. at ¶5, but she also signed the letter terminating the wind farm project. *See* Exh. E to MNS Complaint; Delgadillo Decl. at ¶5.

Moreover, Ms. Carlson's testimony will be critical to central issues in this case, as Ms. Carlson's testimony regarding the Government's obligations and duties under the Easement, and reasons for terminating the Easement, go directly to the heart of the disputes between the parties. MNS acknowledges that the Government had the explicit right to terminate the Easement for national security reasons, but under the Easement was required to implement any such termination by eminent domain. *See* Delgadillo Decl. at ¶3; Exhibit A to MNS's Complaint at Part II - page 3, ¶E(1). The Government, however, maintains that under the agreements it could

unilaterally terminate, for national security reasons, the environmental review process required in order to develop the wind farm project, and thereby avoid compensating MNS for its development of the project. Delgadillo Decl at ¶4; Ex. E to MNS's Complaint. Because this dispute involves, among other things, the interpretation of the agreements between the parties, it is likely that this Court will be asked to determine the intent of the parties as expressed in the agreements. Delgadillo Decl. at ¶4. As a result, the Court will need to assess and weigh the credibility of Ms. Carlson's testimony (as well as the testimony of others) regarding these issues. Given this Court's prior relationship with and personal regard for Ms. Carlson, the Court's impartiality might be reasonably questioned, and MNS therefore respectfully requests that the Court disqualify herself from these proceedings.

Finally, because no substantive work has been done in this case, there are undoubtedly several other judges on the Court that can handle this matter without causing any prejudice to the parties or requiring any substantial duplication of judicial efforts. In light of the Court's personal contact with and personal regard for an important witness in this case, disqualification is particularly appropriate under these circumstances.

## CONCLUSION

For the reasons discussed above, MNS respectfully requests that the Court disqualify herself from these proceedings.

Dated: February 2, 2005

Respectfully submitted,

s/Steven S. Rosenthal
by s/Jeffery A. Tomasevich
George T. Caplan
Bryant S. Delgadillo
KAYE SCHOLER LLP
1999 Avenue of the Stars
Suite 1700
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

Steven S. Rosenthal, *Counsel of Record*
Jeffery A. Tomasevich
KAYE SCHOLER LLP
901 Fifteenth Street, NW, Suite 1100
Washington, D.C. 20005
Telephone: (202) 682-3500
Facsimile: (202) 682-3580

*Counsel for Plaintiff*
*MNS Wind Company, LLC*

CERTIFICATE OF FILING

I hereby certify that on February 2, 2005, a copy of the foregoing Motion to Disqualify was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Steven S. Rosenthal
by s/Jeffery A. Tomasevich