# Exhibit C

# COMPENSATION AGREEMENT

This Compensation Agreement ("Agreement") is entered into as of this 17 day of January, 2001, by and between NTS DEVELOPMENT CORPORATION, a Nevada not-for-profit corporation ("Subgrantor"), and MNS Wind Company, LLC, a Delaware limited liability company ("Subgrantee").

## RECITALS

A. Subgrantee is entitled to use and occupy the Premises as defined in and pursuant to the terms of a Subeasement between the parties of even date herewith (the "Subeasement"). A true and correct copy of the Subeasement is attached hereto as Exhibit "1", and is incorporated herein by this reference. Capitalized terms not defined herein shall have the meaning provided in the Subeasement.

B. Subgrantor is entitled to compensation from Subgrantee for the rights, services, and benefits granted Subgrantee under the Subeasement.

**NOW THEREFORE,** in consideration of the foregoing premises and the mutual promises of the parties which are set forth below, Subgrantor and Subgrantee agree as follows:

1. **Subeasement Fees.**

A. Annual Fee. In consideration of use of the Premises by Subgrantee for Economic Development Activity, Subgrantee agrees to pay to Subgrantor a fee in the amount of Forty Seven Thousand Dollars ($47,000) per year (the "*Annual Fee*"). The Annual Fee shall be payable in equal monthly installments on the last day of each month commencing in the month following written notice from Subgrantee to Subgrantor of its approval of each of the conditions precedent set forth in Paragraph 18.7 of the Subeasement (the "*Commencement Date*"). The Annual Fee shall be reduced by the amount of the Success Fee (as hereinafter defined) and shall be prorated on the basis of any partial year.

B. Success Fee. Subgrantee shall pay, in addition to all other fees required herein, a "Success Fee" equivalent to (i) one and one-half percent (1.5%) of all gross revenues arising solely from the sale of wind based electrical power generated from the first one hundred twenty (120) wind turbines constructed and operating on the Premises, and (ii) one and three-quarters percent (1.75%) of all gross revenues arising solely from the sale of wind based electrical power generated from any wind turbines constructed and operating on the Premises in excess of one hundred twenty (120)

turbines (the "*Success Fee*"). The Success Fee shall be determined as of the last day of each calendar month, and the fees due for any month shall be payable sixty (60) days following the end of such month.

C. Annual Fee and Success Fee Adjustment. Upon each of the fifth, tenth, fifteenth, twentieth, twenty-fifth and thirtieth anniversary of the Subeasement Term Commencement Date, the Annual Fee shall be adjusted for any increases in the cost of living as reflected in consumer price index described below or any successor index (provided that the adjusted fee shall not be less than the fee payable prior to the adjustment). The adjusted Annual Fee shall be determined as of each adjustment date by multiplying the Annual Fee in effect prior to the adjustment by a fraction, the denominator of which shall be the index figure for the month in which the term of this Subeasement commenced, as published by the US Department of Labor, Bureau of Labor Statistics Consumer Price Index for All Urban Consumers, U.S. City Average, All Items (1982-84 = 100) or if the Bureau ceases to publish said index figure, then any similar index mutually agreed to by the parties representing an equivalent economic measurement (the "CPI"), and the numerator of which shall be the CPI for the month which is three months prior to the month in which the adjustment occurs.

D. Fees during an Option Period. The Annual Fee and Success fees shall be subject to adjustment at the end of the initial term hereof and the parties shall negotiate said Fees prior to the commencement of any Option Period. The fees payable during the Option Period shall be the fair rental value of the Premises based on its use as a wind powered electric generating facility (the "Project"), provided that the fee payable during the Option Period shall not be less than the fees payable during the initial term. In the event the parties do not agree on the fair rental value of the Premises prior to the commencement of the Option Period, the fees shall be determined by arbitration as hereinafter provided.

E. Expense Reimbursement. Concurrently with the funding of the first advance of the construction loan for the Project to be constructed on the Premises, Subgrantee shall reimburse Subgrantor for actual third party costs and expenses incurred by Subgrantor in connection with this Subeasement, evidenced by receipts and not previously paid or reimbursed by Subgrantee prior to the date hereof, in an amount not to exceed Two Hundred Fifty Thousand Dollars ($250,000).

2. **Additional Subgrantor Services Compensation:**

Services are available from the DOE or its contractors as identified in the Easement, Exhibit A, Section 7, *Site Facilities and Support Services*, attached to the Subeasement as Exhibit 1. The Subgrantor will be invoiced from DOE or its contractors for any and all services requested in writing and approved by Subgrantee. Subgrantor will invoice the Subgrantee the actual cost of these services, plus up to a five percent (5%) processing fee (provided that no processing fee shall be charged on any work in connection with the construction of the Project, or on any work contracted directly between Subgrantee and any such contractor (except for routine NTS support services)) as soon as is reasonably possible after receipt of invoice from DOE or its contractors and shall provide Subgrantee copies of all such invoices (which invoices shall be subject to the review and reasonable approval of Subgrantee). Subgrantor agrees to pay such invoices reasonably approved by Subgrantee as soon as practicable, but in no case later than ten (10) business days following written demand.

Some services which are used by the Subgrantee such as electricity, water, sewage, solid waste collection, landfill, etc. may not be specifically requested by the Subgrantee, but will be deemed as requested by their use. Payment for these items will be handled in a manner identical to the above. Subgrantor shall fairly pro-rate bills received from DOE or its contractors which include aggregated amounts used by other users of the NTS based, to the extent possible, on service actually used by each such party. Utilities shall be separately metered to the extent possible.

3. **Events of Default:**

(i) The occurrence of any one or more of the following events shall constitute an Event of Default:

(a) Subgrantee shall fail to pay when due any Fee, or any other payment required pursuant to this Agreement or the Subeasement within ten (10) business days after written notice thereof is sent to Subgrantee; (b) Subgrantee shall do or permit to be done any act which results in a lien being filed against the Premises which is not discharged or bonded within thirty (30) days after written notice from Subgrantor; (c) the liquidation, termination, dissolution of Subgrantee; or (d) Subgrantee shall breach any term, covenant, agreement or provision of this Agreement or the Subeasement, which breach continues for a period of thirty (30) days after written notice from Subgrantor to Subgrantee; provided, however, that if the nature of the default is such that more than thirty (30) days are reasonably required for its cure, then Subgrantee shall not be in default if Subgrantee commences such cure within such thirty (30) day period and thereafter diligently prosecutes such cure to completion. Subgrantor shall provide each lender to the Project, on a timely basis, copies of any notices of breach or default given to Subgrantee under this Agreement or the Subeasement, concurrently with the giving of such notice to Subgrantee. Each

such lender shall have the right to cure any default under this Agreement, the Subeasement or the Easement, and Subgrantor agrees to accept such cure.

If any of the Events of Default described above shall occur, the Subgrantor has the right to pursue any remedy now or hereafter available to Subgrantor under the laws of the State of Nevada. All rights and remedies of Subgrantor at law or equity are cumulative and the exercise of any one or more rights or remedies shall not be taken to exclude or waive the right to exercise any other. In no event shall Subgrantee be liable for special or consequential damages.

(ii) Subgrantor Default. Subgrantor shall be in default under the Subeasement and this Agreement if the DOE or Subgrantor fail to perform any obligation required to be performed by such parties under the Easement or Subeasement within thirty (30) days after the receipt of notice from Subgrantee specifying the failure to perform; provided, however, if the nature of the obligation is such that more than thirty (30) days are required for its performance, then Subgrantor shall not be in default if the DOE or Subgrantor commences such performance within such thirty (30) day period and thereafter diligently pursues the same to completion. Upon any default by the DOE or Subgrantor, Subgrantee may exercise any of the following rights in addition to such other rights and remedies as are available to Subgrantee at law , in equity or under the Subeasement or Easement: (i) terminate the Subeasement, or (ii) perform any obligation of the DOE or Subgrantor specified in the notice of default and set off all of the costs and expenses thereof from the fees or other charges thereafter due under the Subeasement, this Agreement or the Easement.

(iii) Fee Abatement.

(a) Eligibility for Abatement. If Subgrantee is prevented from using and does not use, all or any portion of the Premises or any other easements granted in connection with the Project (the "Affected Area") as a result of any Abatement Event (as hereinafter defined) which continues for either fifteen (15) consecutive business days after Subgrantor's receipt of notice from Subgrantee of the Abatement Event or thirty (30) business days in any twelve- (12-) month period after Subgrantor's receipts of such notice (the "Eligibility Period"), the fees payable under this Agreement shall be abated after the expiration of the Eligibility Period for such time that Subgrantee has been prevented from using, and does not use, the Affected Area in the greater of (a) the proportion that the installed megawatts in the Affected Area bears to the total number of installed megawatts in the Premises, and (b) the proportion that the area in the Affected Area bears to the total area in the Premises (provided that if the Affected Area contains any equipment which affects the operation of any other portion of the Project, the Affected Area shall be deemed to include such other portion of the Project).

(b) Full Abatement. If Subgrantee is prevented from using, and does not use, any portion of the Premises for a period of time in excess of the Eligibility Period and the remaining portion of the Premises is not sufficient to allow Subgrantee to economically conduct its business, no fees shall be due for the time after expiration of the Eligibility Period during which Subgrantee is precluded from using, and does not use, the entire Premises. If, however, Subgrantee begins economic use of any portion of the Premises during this period, the fees allocable to the portion so used shall be payable by Subgrantee from the date on which Subgrantee commences such use.

(c) Abatement Event. An "Abatement Event" is (A) the failure of the DOE or Subgrantor to perform any repair, maintenance, alteration or other obligation that such party is required to perform under the Easement or Subeasement and such failure substantially interferes with Subgrantee's use of the Premises for the generation of wind powered electricity, (B) any failure of or interruption in utilities or services required to be supplied by the DOE or Subgrantor to the Premises which failure or interruption substantially interferes with Subgrantee's use of the Premises for the generation of wind powered electricity, (C) the presence of hazardous materials on the Premises (other than those brought into the Premises by Subgrantee), (D) any failure of the DOE or Subgrantor to provide Subgrantee with access to the Premises, (E) breach of the covenant and agreement set forth in Paragraph 1(a), Part I of the Easement or Paragraph 2(c) of the Subeasement, or (F) any damage or destruction as a result of a force majeure event. Subgrantee's rights and remedies under this paragraph shall be in addition to all of Subgrantee's rights and remedies provided in this Subeasement or the Easement, or at law or in equity.

4. **Miscellaneous Provisions.**

(a) **Attorneys' Fees.**

In the event of any litigation or arbitration between the parties regarding the Subeasement or the Agreement, the losing party shall pay to the prevailing party all reasonable expenses and costs (including reasonable attorneys' fees and expenses) incurred by the prevailing party (including on appeal and in connection with the enforcement of any award or judgment).

(b) **Arbitration.**

(i) General. The parties agree to settle all controversies, claims, disputes or differences between them arising out of or relating to this Agreement, the Subeasement or the Easement by arbitration in accordance with the Rules of the American Arbitration Association ("AAA") in effect at the time of the arbitration ("Rules"), except as such Rules may be modified by this Agreement. Notwithstanding any provisions of such Rules, the parties shall have the right to take depositions and obtain discovery regarding the subject matter of the arbitration in accordance with the Federal Rules of Evidence.

(ii) Procedure. A party desiring to submit a dispute to arbitration hereunder shall file a demand for arbitration ("Demand for Arbitration") with the AAA. A copy of such Demand for Arbitration shall be sent to the other party at the same time. The arbitration proceeding shall be conducted by a panel of three arbitrators. Within ten (10) days after a Demand for Arbitration has been made by either party, each party shall appoint one arbitrator. Within twenty (20) days after the Demand for Arbitration has been made, the two arbitrators shall choose a third arbitrator who shall act as chairperson of the arbitral proceedings. If the two arbitrators chosen by the parties do not agree upon a third arbitrator within twenty (20) days after the filing of the Demand for Arbitration, then upon the application of either party, the third arbitrator shall be appointed by the AAA.

(iii) Venue. The site of the arbitration shall be Las Vegas, Nevada unless otherwise agreed to by the parties. The parties shall diligently and expeditiously proceed with arbitration. Upon the conclusion of the hearing, the parties shall have thirty (30) days to submit written briefs in support of their respective positions. The arbitrators shall be instructed to render a written decision within forty-five (45) days after the filing of such briefs, subject to any reasonable delay due to unforeseen circumstances.

(iv) Remedies. Except to the extent the parties' remedies may be limited by the terms of this Agreement or the Subeasement, the arbitrators shall be empowered to award any remedy available under the laws of the State of Nevada, including monetary damages. The award of the arbitrators shall be in writing with reasons for such award and signed by the arbitrators. The parties agree that any such award rendered shall be final and binding. Judgment rendered by the arbitrators may be entered in any court having jurisdiction thereof.

(v) Expenses. The parties shall share equally (50/50) the compensation and expenses of the arbitrators as well as all fees imposed by the AAA, including, but not limited to, transcripts, hearing room rentals, filing fees and administrative costs. The parties shall be responsible for their own costs and legal fees, if any. Notwithstanding the foregoing, the arbitrators shall make a determination of the prevailing party and shall award such party its costs, expenses and legal fees.

(c) **Late Fee Charge and Interest.** If any payment under this or any other agreement with Subgrantor is not timely made by Subgrantee and remains overdue for a period of ten (10) business days after written notice, Subgrantee agrees to pay Subgrantor interest on all sums due equal to 18 per cent per annum on the unpaid balance of all fees and expenses until paid in full.

(d) Notices. All notices under this Agreement shall be in writing and shall be delivered by personal delivery or sent by registered or certified mail, postage prepaid, or overnight delivery, or facsimile as follows:

To Subgrantee: MNS Wind Company, LLC
c/o M&N Wind Power, Inc.
4225 Executive Square, Suite 1650
La Jolla, California 92037
Attention: Mr. John Johansen

To Subgrantor: NTS Development Corporation
2330 Paseo del Prado, Suite C-101
Las Vegas, Nevada 89102
Attention: President

Notices which are delivered by personal or overnight delivery or facsimile shall be effective upon receipt. Notices, which are given by mail as required above, shall be considered given and received two (2) business days after deposit in the mail.

(e) **Partial Invalidity.** If any provision of this Agreement is invalid or unenforceable to any extent, then that provision shall be null and void and the remainder of this Agreement shall continue in effect and shall be enforceable to the fullest extent permitted by law.

(f) **Waiver.** The failure of either party to exercise any of its rights is not a waiver of those rights. A party waives only those rights specified in writing and signed by the party waiving its rights.

(g) **Binding on Successors.** This Agreement shall bind the parties' heirs, successors, representatives, and assigns.

(h) **Governing Law.** The laws of the State of Nevada shall govern this Agreement.

(i) **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same document.

(j) **Integration**. This Agreement constitutes part of the Subeasement, which is incorporated herein by this reference and made a part hereof. This Agreement terminates concurrently with the expiration or termination of the Subeasement.

IN WITNESS WHEREOF, Subgrantor and Subgrantee have executed this Agreement as of the date written above.

"Subgrantor"

NTS DEVELOPMENT CORPORATION
a Nevada not-for-profit corporation

By: [signature]
Name: TIM CARLSON
Its: PRESIDENT & CEO

"Subgrantee"

MNS WIND COMPANY, LLC
a Delaware limited liability company

By: John A. Johansen
John A. Johansen
Authorized Representative