IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MNS WIND COMPANY, LLC, a Delaware limited liability company, | ) | CASE NO. 04-1569C |
| | ) | (Judge Wolski) |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Plaintiff, MNS Wind Company LLC ("MNS") and Defendant, the United States of America (the "Government"), through its undersigned attorneys, hereby make their Joint Preliminary Status Report, pursuant to paragraphs 4 through 6 of Appendix A of the Rules of the United States Court of Federal Claims ("RCFC").

## I. QUESTIONS TO THE PARTIES

### A. JURISDICTION

MNS' complaint is founded upon written contracts with the United States Department of Energy ("DOE"). MNS believes that this Court has jurisdiction over this action under 28 U.S.C. section 1491(a). At this time, the Government is not aware of any reason to question this Court's jurisdiction.

### B. CONSOLIDATION

There are no other pending cases which merit consolidation with this action.

### C. BIFURCATION

While the parties do not believe that a formal bifurcation is necessary, the parties agree that any discovery regarding damages should be held in abeyance until issues of liability are

resolved. Presently, the issue of liability appears to be a legal issue - one of contract interpretation. It does not appear that there are disputes of fact that are material to this issue. After the exchange of Rule 26 Initial Disclosures, the parties believe that little, if any, additional fact discovery regarding liability will be necessary to proceed with a determination of this issue. As discussed below, the parties agree that cross-motions for summary judgment on the issue of liability should be filed as soon as possible.

**D. DEFERRAL**

The parties find no reason to defer further proceedings in this case.

**E. REMAND OR SUSPENSION**

The parties do not foresee a request for remand or suspension of this case.

**F. ADDITIONAL PARTIES & JOINDER**

The parties do not foresee the necessity of joining additional parties.

**G. MOTIONS PURSUANT TO RCFC 12(b), 12(c) or 56**

The parties propose filing cross-motions for summary judgment pursuant to RCFC 56 (or other similar dispositive motions) on the issue of liability. The parties agree to simultaneously file opening briefs by September 14, 2005. The parties, however, reserve their right to conduct discovery if factual issues material to the issue of liability are raised in the motion papers.

**H. FACTUAL AND LEGAL ISSUES**

**1. Plaintiff's Factual and Legal Contentions**

**a. Plaintiff's Factual Contentions**

In or about June 2000, the Nevada Test Site Development Corporation ("NTSDC") on behalf of the Department of Energy ("DOE") approached Global Renewable Energy Partners, Inc. ("GREP") with a proposal to develop a commercially viable alternative energy production

facility on the Nevada Test Site ("NTS"). The NTS was formerly used as a testing area for nuclear weapons. After several months of negotiations, DOE, NTSDC and MNS executed agreements intended to result in the development of one of the largest wind-energy farms in the United States at the NTS.

One of the critical terms of the agreements was a provision giving the DOE the right to terminate the agreements and revoke the easement granted for the project for national security reasons so long as DOE did so by eminent domain, so that MNS would be fairly compensated for its efforts. Paragraph E(1) of Part II of the Easement was negotiated and agreed to because the DOE needed to retain the right to terminate for national security reasons, but there would be no incentive for a private entity to invest resources in the development of the project if the project could be terminated at any time by the DOE without compensating the developer for its investment.

MNS spent two years and millions of dollars in developing the project under the agreements. On July 12, 2002, the DOE unilaterally terminated the project. But instead of terminating the project pursuant to paragraph E(1) of Part II of the Easement, which was specifically negotiated for this purpose, the DOE stated that due to "national security" concerns it was terminating the NEPA/environmental review process and claimed that the Easement never became effective. Completion of the NEPA process was -- like all land use projects -- a condition to the development of the project, but only MNS had the right to terminate the NEPA process if mitigation costs exceeded whatever MNS thought was reasonable given the overall costs of the project. Indeed, the environmental impact statement ("EIS") report -- a final draft of which was made public a few days after the DOE terminated the project -- failed to identify any significant impacts that would have been a barrier to the development of the project. The EIS

identified basically four types of mitigation that would have been required: wildlife, cultural (Native American), archaeological, and general environmental/ministerial. An initial estimate of the cost of mitigation if the project had gone to construction was less than $2 million. But for the termination of the NEPA process by the DOE, the environmental condition of the Easement would have been satisfied.

**b. Plaintiff's Legal Contentions**

This case concerns DOE's breach of the contracts by, among other things, failing to terminate the project as provided for in paragraph E(1) of Part II of the Easement, and unilaterally preventing plaintiff from fulfilling the independent NEPA condition. Pursuant to paragraph E(1) of Part II of the Easement, the DOE was permitted to terminate the project for national security reasons, but only by implementing the termination by eminent domain. The DOE terminated the project for national security reasons, but not pursuant to paragraph E(1) of Part II of the Easement. Instead, in order to attempt to avoid taking responsibility for the costs and value of the development of the project, the DOE wrongfully interfered with the NEPA/environmental condition by terminating the environmental review process.

**2. Defendant's Factual and Legal Contentions**

**a. Defendant's Factual Contentions**

On December 22, 2000, the Department of Energy's Nevada Operation Office ("DOE"), which is a subunit of DOE's National Nuclear Security Agency ("NNSA"), entered into a Grant of Easement with the not-for-profit Nevada Test Site Development Corporation ("NTSDC") to permit the development of a wind-generating electricity facility on property owned by DOE. On January 17, 2001, NTSDC entered into a subeasement with MNS Wind Company, LLC, (the plaintiff in this action) to permit development of the facility. On the same date, DOE executed a

"Consent of Master Permittor" approving and consenting to the subeasment between NTSDC and plaintiff. There is no express contract between DOE and plaintiff in this matter and plaintiff is proceeding in this case upon a third-party beneficiary theory.

The Grant of Easement executed by DOE was specifically conditioned upon completion of the requirements of the National Environmental Policy Act ("NEPA") , 42 U.S.C. § 4321 *et seq*. Indeed, the Grant of Easement expressly provided that the parties agreed that the grant "will not become effective until DOE has completed the NEPA process." See Exhibit A to Compl. at Easement Exhibit A Page 8. In summary, NEPA covers defined "major Federal actions" and imposes upon the Federal Government certain specific planning requirements. See 42 U.S.C. § 4321 *et seq*.; 40 C.F.R. Sections 1550-1508. It is undisputed that the Grant of Easement permitting construction of a wind-generating facility on Federal property was a "major Federal action" to which the requirements of NEPA applied.

Initially, DOE envisioned that the NEPA requirements could be fulfilled through "less rigorous" method of analysis permitted by NEPA called an Environmental Assessment ("EA"). While conducting the EA, DOE received public comments and concerns about the proposed project. Accordingly, DOE determined that it could not issue a Finding of No Significant Impact ("FONSI") as permitted by NEPA and, instead, elected to continue with the "more rigorous" method of analysis permitted by NEPA called an Environmental Impact Statement ("EIS"). The EIS process was initiated and a preliminary draft EIS was being prepared. That preliminary draft EIS specifically noted that the Air Force, which owns adjoining land to the proposed project site and conducts air operations over the proposed site, had concerns regarding the proposed project based upon adverse impact to continuing Air Force operations in the area. On July 5, 2002, the Administrator of NNSA, given the Air Force's objections, selected the "No

Action" option under the NEPA planning requirements and, accordingly, the "major Federal action" was not approved. On July 12, 2002, DOE's Nevada Operations Office notified plaintiff of the Administrator's decision and that, in accordance with the terms of the Grant of Easement, the easement would not go into effect.

**b. Defendant's Legal Issues**

1. Whether the Grant of Easement, which was expressly conditioned upon completion of all requirements of NEPA, 42 U.S.C. § 4321 *et seq*., ever went into effect and became enforceable?

2. Even if the Grant of Easement went into effect and became enforceable, did the Government breach the Grant of Easement by electing the "No Action" option under NEPA?

3. If the Government breached the Grant of Easement, what damages, if any, is plaintiff entitled to receive?

**I. LIKELIHOOD OF SETTLEMENT**

The parties believe that it is premature to have any settlement discussions at this time. Once the issue of liability has been briefed by the parties, the parties may be in a better position to discuss settlement.

**J. TRIAL**

If this Court determines that the Government is liable to MNS and absent a settlement, the parties anticipate proceeding to a trial on the issue of damages. Neither party requests an expedited trial. The parties, however, currently anticipate that the trial could be completed within five to seven court days.

**K. ELECTRONIC CASE MANAGEMENT NEEDS**

There are no special issues regarding electronic case management needs.

**L. ADDITIONAL INFORMATION**

The parties have no additional information that the court should be made aware of at this time.

## II. PROPOSED DISCOVERY PLAN

As discussed above, at this time and without having reviewed the initial disclosures or conducted any discovery, the parties believe that there are very few, if any, factual issues in dispute regarding liability. One potential discovery issue is that the NEPA draft EIS was prepared by a contractor to MNS. It is not currently clear to the parties whether they have a complete copy of the files of that contractor. In the event it turns out that the parties do not have a complete set of those files, the Government intends to serve a subpeona duces tecum on that contractor and will share copies of documents obtained with MNS. Therefore, the parties propose the following schedule regarding liability:

| | |
|---|---|
| 1) Deadline for exchanging Rule 26 disclosures: | April 29, 2005 |
| 2) Opening briefs regarding liability: | September 14, 2005 |
| 3) Opposition briefs: | October 12, 2005 |
| 4) Reply briefs: | October 26, 2005 |

If this Court determines that the Government is liable to MNS, the matter will proceed with discovery regarding damages. The parties propose six months of fact and expert discovery for the damages phase with a final cutoff for all discovery regarding damages, including expert discovery, by March 31, 2006. The parties would then anticipate a trial date in May 2006, if that was available.

Dated: April 4, 2005

Respectfully submitted,

s/ George T. Caplan
George T. Caplan, Counsel of Record
KAYE SCHOLER LLP
1999 Ave. of the Stars, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1285

*Attorneys for Plaintiff*
*MNS Wind Company, LLC*

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

CERTIFICATE OF FILING

I hereby certify that on April 4, 2005, a copy of the foregoing Joint Preliminary Status Report was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Bryant S. Delgadillo