No. 04-1569
Judge Wolski

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

MNS WIND COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRYANT G. SNEE
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 307-0282
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:
SHARON HEJAZI
PAUL MICHAEL
Attorneys
Office of Counsel
Department of Energy

October 4, 2005

# TABLE OF CONTENTS

STATEMENT OF THE CASE AND SUMMARY OF MATERIAL FACTS . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. No Contract Was Formed Between MNS Wind And DOE . . . . . . . . . . . . . . . . . 4

A. The Easement's Plain Language Forms A Condition Precedent To Contract Formation . . . . . . . . . . . . . . . . . . . . . 4

B. Regulations Make Completion Of The NEPA Process An Uncertain Condition Precedent To Contract Formation . . . . . . . . . . 7

C. NEPA Permitted DOE To Consider The Air Force's Concerns . . . . . . . 9

D. The Condition Precedent Went Unmet And No Express Contract Was Formed . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. MNS Wind Impermissibly Attempts To Use Estoppel To Bind DOE . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alaska Lumber & Pulp Co. v. Madigan,
2 F.3d 389 (Fed. Cir. 1993) . . . . . . . . . . 5

Allen v. Cedar Real Estate Group, LLP,
236 F.3d 374 (7th Cir. 2001) . . . . . . . . . . 4, 5

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 3

Bob Marshall Alliance v. Lujan,
853 F.2d 1223 (9th Cir. 1988) . . . . . . . . . . 8

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 4

Centigram Argentina, S.A. v. Centigram Inc.,
60 F. Supp. 2d 1003 (N.D.Cal. 1999) . . . . . . . . . . 14

City of Tanakee Springs v. Clough,
915 F.2d 1308 (9th Cir. 1990) . . . . . . . . . . 8

Colorado Environmental Coalition v. Dombeck,
185 F.3d 1162 (10th Cir. 1999) . . . . . . . . . . 10

Consumers Energy Co. v. United States,
65 Fed. Cl. 364 (2005) . . . . . . . . . . 11

D.C. Andrews & Co. v. United States,
154 Ct. Cl. 460 (1961) . . . . . . . . . . 4

Essen Mall Properties v. United States,
21 Cl. Ct. 430 (1990) . . . . . . . . . . 11

Fed. Crop Ins. Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . 7

Girling Health Systems, Inc. v. United States,
22 Cl. Ct. 66 (1990) . . . . . . . . . . 4

Gregory v. United States,
37 Fed. Cl. 388 (Fed. Cl. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Heckler v. Cmty. Health Servs.,
467 U.S. 51 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Heidelberg Harris, Inc. v. Loebach,
145 F.3d 1454 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Jackson County, Mo. v. Jones,
571 F.2d 1004 (8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jarvis v. United States,
43 Fed. Cl. 529 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lakes Region Legal Defense Fund, Inc. v. Slater,
986 F. Supp. 1169 (N.D. Iowa 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Landmark Land Co. v. United States,
256 F.3d 1365 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Louis Leustek & Sons, Inc., v. United States,
41 Fed. Cl. 657 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

M.A. Mortenson Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

McAbee Const. Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Metcalf v. Daley,
214 F.3d 1135 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Moden v. United States,
404 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

N.L.R.B. v. General Teamsters Union Local 662,
368 F.3d 741 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Renda Marine, Inc. v. United States,
66 Fed.Cl. 639 (Fed.Cl. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Robertson v. Methow Valley Citizens Council,
490 U.S. 332 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Schuerman v. United States,
30 Fed. Cl. 420 (Fed. Cl. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Sinclair v. United States,
56 Fed. Cl. 270 (Fed. Cl. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

South Trenton Residents Against 29 v. Federal Highway Admin.,
176 F.3d 658 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United Pacific Ins. Co. v. Roche,
401 F.3d 1362 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Varilease Technology Group, Inc. v. United States,
289 F.3d 795 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wells Fargo Bank, N.A. v. United States,
88 F.3d 1012 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wells Fargo Bank, N.A. v. United States,
26 Cl. Ct. 805 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Zacharin v. United States,
213 F.3d 1366 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Zyla v. Wadsworth, Div. of Thomson Corp.,
360 F.3d 243 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TREATISES

John D. Calamari & Joseph M. Perillo, The Law of Contracts § 11.2 (4th ed.) . . . . . . . . . . . . . 5

13 Williston on Contracts § 38 (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

STATUTES AND REGULATIONS

42 U.S.C. § 4331 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

44 U.S.C. § 1507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10 C.F.R. § 1021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

40 C.F.R. §§ 1500-1508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

# INDEX TO DEFENDANT'S APPENDIX

Selections from the Preliminary Draft Environmental Impact Statement . . . . . . . . . . . . . . . . . . 1

Map of the Nevada Test Site . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Signed copy of the easement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Signed copy of the subeasement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Letter from Kathleen Carlson to Col. Schofield referencing
Col. Eidsaune's comments about the Environmental Assessment . . . . . . . . . . . . . . . . . . . . . . . . 58

Comments from Col. Eidsaune about the Environmental Assessment . . . . . . . . . . . . . . . . . . . . 59

DOE Letter announcing a Notice of Intent
to create an Environmental Impact Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Internal Air Force memorandum seeking wind turbine information . . . . . . . . . . . . . . . . . . . . . 63

E-mail from Air Force asking for turbine information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

E-mail from Air Force officer to Air Force officer with map of site attached . . . . . . . . . . . . . . 66

E-mail from DOE to Air Force with turbine information . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

E-mail from DOE to Air Force with turbine information . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

E-mail from Air Force to DOE seeking information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

E-mail among Air Force officers reporting on meeting with MNS Wind . . . . . . . . . . . . . . . . . 70

E-mail from Air Force officer to Air Force
Officers about coordinates for turbines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

E-mail from NTSDC to Air Force officer about elevations for turbines . . . . . . . . . . . . . . . . . . 73

E-mail from DOE about receipt of Air Force study . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

Memo from Kathleen Carlson to Gen. Gordon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

Memo from Col. Percival to Kathleen Carlson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

DOE e-mail update about Air Force concerns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

E-mail from Bash Nola about turbine specs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

E-mail from DOE saying project on-hold . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81

E-mail from NTSDC about Air Force concerns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

E-mail from NTSDC about Air Force concerns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

E-mail from NTSDC about Air Force concerns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

Letter from NTSDC President Tim Carlson regarding Air Force concerns . . . . . . . . . . . . . . . . 85

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MNS WIND COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1569 |
| | ) | (Judge Wolski) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) and (h)(1) of the Court's Rules, defendant, the United States, respectfully requests the Court to hold that no contract arose between the United States and the plaintiff, MNS Wind Company. In the absence of a contract, MNS Wind lacks any legal remedy. Accordingly, the United States asks the Court to enter summary judgment in its favor. In support of this motion, we rely upon the complaint, the accompanying proposed findings of uncontroverted fact and appendix, and this brief.

**STATEMENT OF THE CASE AND SUMMARY OF MATERIAL FACTS**

This case arises from a proposal by a private entity to install electricity generating wind turbines on the Nevada Test Site ("NTS"), which was formerly used for nuclear weapons testing. Compl. ¶¶ 1, 3-4. The NTS is federally owned property managed by the National Nuclear Security Administration ("NNSA"), an agency of the United States Department of Energy ("DOE"). The NTS is located approximately 60 miles northwest of Las Vegas, Nevada, and is surrounded on three sides by the United States Air Force National Testing and Training Range. App. 11; see App. 12.

DOE has partnered with a private corporation, the Nevada Test Site Development Corporation ("NTSDC"), for the purpose of encouraging economic development on the NTS.

App 2. In March, 2000, NTSDC approached M&N Wind Power with a development proposal. Compl. ¶ 3. M&N Wind Power in turn formed a company, MNS Wind Company, LLC, to undertake the project. Compl. ¶ 6. After negotiations, DOE and NTSDC signed an agreement in December, 2000, giving NTSDC a conditional easement to allow MNS Wind to construct wind turbines on the NTS. App 13. NTSDC then signed a subeasement, subject to the terms and conditions of the primary easement, with MNS Wind. Compl. ¶ 24; App. 44.

The primary easement between DOE and NTSDC was made conditional upon DOE's review of the project under the National Environmental Policy Act ("NEPA"). App. 13, 37. The NEPA process for the turbine project began with a draft Environmental Assessment ("EA"). See App. 58. In response to this draft EA, DOE received comments from various interested parties and other agencies, including the Air Force. App. 59-60. These comments prompted DOE to undertake a more rigorous review process under NEPA, called an Environmental Impact Statement ("EIS"). App. 61-62. Over the course of the EA and EIS processes, the Air Force sought more precise information from MNS Wind about the technical specifications and the precise geographical locations for each of its proposed wind turbines. App. 63-73.

Once it had the information it required, the Air Force conducted a study and determined, by June, 2002, that wind turbines on the NTS would conflict with Air Force testing and training activities in and around the proposed site. App. 74-75. After the Air Force's concerns were finalized, DOE manager Kathleen Carlson recommended to the Administrator of NNSA, General John Gordon, that the "no action" alternative identified in the preliminary draft EIS be approved. App. 76-77. General Gordon accepted Ms. Carlson's recommendation, and adopted the alternative, cancelling the project under NEPA, and precluding the easement and subeasement

from coming into effect. App 76-77.

## SUMMARY OF ARGUMENT

MNS Wind sues the United States for the breach of a contract that never existed. Both parties signed an "easement" that might have become a binding agreement, but this easement was explicitly contingent upon the completion of a review process compelled by NEPA.[1] This NEPA review process terminated when DOE elected not to pursue the wind turbine project. Because of this termination, a condition precedent to contract formation went unmet, and no contract arose between the parties.

As we demonstrate below, this result is supported by the plain language of the agreement and Federal statutes and regulations. Further, the law does not now estop the Government from denying the existence of a contract. MNS Wind thus lacks any contractual remedy in this case, including any claim under the easement to "eminent domain" damages. Summary judgment in the government's favor is the only proper outcome here.

## ARGUMENT

### I. Legal standards

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Moden v. U.S., 404 F.3d 1335, 1342 (Fed. Cir. 2005) (citing RCFC 56(c)); FRCP 56(c))). A factual issue is "genuine" only if the Court could find for the party opposing summary judgment and "material" only if it could affect the judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The mechanism of summary judgment is "designed 'to ensure the just, speedy and

[1] Codified at 42 U.S.C. § 4321 et seq.

inexpensive determination of every action," Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting FRCP 1). Resolving a dispute via summary judgment is appropriate in contract interpretation cases, which turn upon questions of law. Varilease Technology Group, Inc. v. U.S., 289 F.3d 795, 798 (Fed. Cir. 2002).

## II. No Contract Was Formed Between MNS Wind And DOE

### A. The Easement's Plain Language Forms A Condition Precedent To Contract Formation

The plain language of the easement creates a condition precedent to formation of a contract between DOE and MNS Wind. The concept of a condition precedent has two facets, both recognized by the United States Court of Appeals for the Federal Circuit or its predecessor court. First, a condition precedent may attach to the performance of a contractual duty. Heidelberg Harris, Inc. v. Loebach, 145 F.3d 1454, 1459 (Fed. Cir. 1998). Second, and relevant here, a condition precedent may circumscribe the formation of a contract. D.C. Andrews & Co. v. United States, 154 Ct. Cl. 460, 465 (1961); Girling Health Systems, Inc. v. U.S., 22 Cl. Ct. 66, 71 (1990).

Conditions that attach to the performance of a duty do not impair contract formation. Wells Fargo Bank, N.A. v. United States, 88 F.3d 1012, 1019 (Fed. Cir. 1996). But, when, as here, parties structure a contract to be subject to a condition precedent, formation of the contract depends upon the happening of that condition. See, e.g., Allen v. Cedar Real Estate Group, LLP, 236 F.3d 374, 381-382 (7th Cir. 2001) (finding a condition precedent to formation where an offer to purchase land was subject to an environmental assessment). Williston notes that "where the parties to a proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions

specified have occurred or been performed." 13 Williston on Contracts § 38:7 (4th ed.). Because no binding contract arises until a condition precedent is met, parties are "free to terminate their arrangement until the condition occurs." John D. Calamari & Joseph M. Perillo, The Law of Contracts § 11.2 (4th ed. 1998).

Whether a contract contains a condition is a matter of contract interpretation. See, e.g., Schuerman v. U.S., 30 Fed. Cl. 420, 434 (Fed. Cl. 1994). When interpreting a contract, a court should give meaning to all of the contract's provisions. M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004). Where those provisions are "clear and unambiguous," they should be given their "plain and ordinary meaning." McAbee Const. Inc. v. U.S., 97 F.3d 1431, 1434-35 (Fed. Cir. 1996) quoting Alaska Lumber & Pulp Co. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993). Thus, this Court should begin and end its analysis with the plain language of the easement. Introducing ambiguity into this agreement where none exists would "cast a long shadow of uncertainty over all transactions and contracts," an outcome the Federal Circuit has disavowed. McAbee, 97 F.3d at 1435.

In the case of conditions, courts generally disfavor interpretations that result in forfeitures. See, e.g., Wells Fargo Bank, N.A. v. U.S., 26 Cl. Ct. 805, 813 (1992). However, as Williston states, "an interpretation cannot be employed as a means of reducing the risk of forfeiture under a contract if the occurrence of the event as a condition is expressed in unmistakable language." Williston § 38:13. Williston's premise is that because parties to a contract are entitled to the benefit of their bargain, a "bad bargain" for one of the parties should not undermine a contract's explicit terms. Id.

The condition precedent in this case was indeed expressed in "unmistakable language."

The easement states plainly, in two places, that it is inoperative until DOE completes its NEPA review. The first sentence of the first paragraph of the easement states that any grant by the Government is "subject to compliance with the National Environmental Policy Act." App. 13. This condition is repeated again in Exhibit A, even more distinctly: "DOE and the Grantee agree that this Grant of Easement will not become effective until DOE has completed the NEPA process." App. 37.

A clearer condition precedent to a contract's formation would be harder to find. The first sentence of the agreement contains the words "subject to," which indicate a condition is being expressed. Williston § 38:16. The "not become effective" language in Exhibit A places this interpretation beyond dispute. If DOE does not approve the project under NEPA, the clause says, no easement exists. DOE did not approve the project; consequently, the condition precedent went unfulfilled. Thus, no contract was formed, and DOE was free to halt the wind farm project without incurring any liability under the easement. That this termination may have interrupted MNS Wind's plans is of no legal consequence; the company relied upon a contingent agreement at its own peril.

**B. Regulations Make Completion Of The NEPA Process An Uncertain Condition Precedent To Contract Formation**

The easement's plain language makes NEPA review a condition precedent to contract formation, and Federal regulations do the same. NEPA requires agencies to conduct analysis and to prepare written reports whenever they undertake "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). DOE's regulations implementing NEPA unequivocally demand completion of the NEPA process before a contract can be consummated.[2] These regulations state that "[i]f the NEPA process is not completed before the award of the contract, financial assistance, or joint venture, then the contract, financial assistance, or joint venture shall be contingent on completion of the NEPA process." 10 C.F.R. § 1021.216(I). This language, like the language in easement itself, is clear; without NEPA finality, no contract exists.

MNS Wind is assumed to be on notice of DOE regulations. Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947); Louis Leustek & Sons, Inc., v. United States, 41 Fed. Cl. 657, 669 (1998); Federal Register Act of 1935, 44 U.S.C. § 1507 (stating that the filing of a document with the Office of the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it"). In Leustek, this Court found that a contractor could not complain about a suspension of work resulting from a citizen's protest under NEPA and Forest Service regulations because the contractor was deemed to be on notice

[2] Two sets of regulations guide DOE in its implementation of NEPA. The first set is promulgated by the Council on Environmental Quality (CEQ), a NEPA-mandated group in the Executive Office of the President. These regulations can be found at 40 C.F.R. §§ 1500-1508. The second set of regulations, found in 10 C.F.R. § 1021, comes from DOE itself. DOE's regulations incorporate the CEQ regulations by reference. 10 C.F.R. § 1021.103.

that such a protest might occur. 41 Fed. Cl. at 669.

Here, not only was DOE required to complete its NEPA review before a contract arose, but the outcome of that review was entirely uncertain. The parties agreed in the easement that DOE would first create an EA, then an EIS if necessary.[3] App. 37. An EIS must encompass the possibility that an agency will take "no action" on a project, a requirement found in the CEQ rules, which contain precise guidelines for the preparation of an EIS. The self-described "heart" of these guidelines is Section 1502.14, which instructs agencies to "[r]igorously explore and objectively evaluate all reasonable alternatives." 40 C.F.R. § 1502.14. Crucially, the agency must include the "alternative of no action" in the EIS – that is, that the proposed project will not be approved. Id. If the agency fails to consider this alternative, it can be sued. See, e.g., City of Tanakee Springs v. Clough, 915 F.2d 1308, 1312 (9th Cir. 1990) (chastising the Forest Service for failing to consider the option of "no action" and instead adhering rigidly to pre-existing contractual obligations); Bob Marshall Alliance v. Lujan, 853 F.2d 1223, 1229 (9th Cir. 1988) (noting that NEPA "requires that alternatives — including the no–leasing option — be given full and meaningful consideration," and observing that "a no-leasing option is no longer viable once the leases have been issued; it must be considered before any action is taken or the statutory mandate becomes ineffective.").

The statutes and regulations are clear. Even aside from the express language of the

[3] The NEPA clause in Exhibit A reads in full: "DOE is preparing an Environmental Assessment (EA) for this Grant of Easement pursuant to the National Environmental Policy Act (NEPA), 42 U.S.C. 4321 et seq. DOE and the Grantee agree that this Grant of Easement will not become effective until DOE has completed the NEPA process. After DOE has completed the EA and considered the environmental impacts of this action, DOE will either issue a Finding of No Significant Impact or prepare an Environmental Impact Statement." App. 37.

easement, MNS was on notice, first, that easement itself was contingent upon NEPA review, and, second, that "no action" was a possible outcome of that review. Thus, MNS was always on notice, as a matter of law, that no contract had arisen between the parties.

### C. NEPA Permitted DOE To Consider The Air Force's Concerns

A "no action" outcome of the NEPA review here was entirely foreseeable, making the easement's NEPA language a manifest condition precedent. At the broadest level, the Supreme Court has described NEPA as not requiring any particular substantive results. See, e.g., Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989). NEPA forces agencies to take a "hard look" at the consequences of their actions, but it does so through procedural, not substantive, imperatives. Id. The Court has noted that NEPA "merely prohibits uninformed — rather than unwise — agency action." Id. at 351. In this context, parties to a project in which NEPA review is required can have no expectation of a settled outcome. This is true even in the face of a written agreement.[4]

In its complaint, MNS Wind suggests incorrectly that the concerns of the Air Force are somehow beyond the scope of NEPA. See Compl. ¶ 28, 30, 37-38. The Air Force's concerns, however, were directly and appropriately within the factors to be considered through NEPA review. These factors relate to any action "significantly affecting the quality of the human

---

[4] For example, in Metcalf v. Daley, 214 F.3d 1135, 1139 (9th Cir. 2000), the National Oceanic and Atmospheric Administration (NOAA) signed an agreement with a Native American tribe concerning the harvest of whales. The agency failed to adhere to NEPA guidelines before signing the agreement, and its action was later successfully challenged. Id. The court noted that an agency's firm commitment to a contract could only occur after NEPA review requirements had been satisfied. Id. at 1145. Thus, it is more appropriate to characterize the easement between the parties here as a "proposal," not as a contract, because anything more formal than a proposal would not be authorized until the NEPA process was exhausted.

environment." 42 U.S.C. § 4332(2)(C). In particular, CEQ regulations specify that an EIS must consider "[p]ossible conflicts between the proposed action and the objectives of Federal . . . land use plans, policies and controls for the area concerned." 40 C.F.R. § 1502.16 (c). Further, in creating its record of decision in a NEPA case, an agency may discuss "technical considerations and agency statutory missions," and must discuss "all such factors including any essential considerations of national policy which were balanced by the agency in making its decision..." 40 C.F.R. § 1505.2(b).

Thus, the preliminary draft EIS specifically identified the Air Force's concerns with radar interference as one of the environmental consequences of the proposed project. App. 6. Conversely, the same document also specifically identified that one of the benefits of the "no action" alternative was that there would be "no potential for interference with U.S. Air Force" activities in the area. Id. This analysis tracked the regulations' requirements for a thorough assessment of the impact the project would have on surrounding land use.

Further, DOE's consideration of the Air Force's use of the space around the NTS was not unusual; NEPA review encompasses a wide spectrum of issues. See, e.g., South Trenton Residents Against 29 v. Federal Highway Admin., 176 F.3d 658, 666 (3d Cir. 1999) ("public safety is a factor that must be evaluated under NEPA"); Colorado Environmental Coalition v. Dombeck, 185 F.3d 1162, 1177 (10th Cir. 1999) (noting that the Forest Service had adequately considered "growth-related socioeconomic factors"); Jackson County, Mo. v. Jones, 571 F.2d 1004, 1012 (8th Cir. 1978) (finding Air Force had adequately considered the effect of personnel relocation upon the surrounding housing market); Lakes Region Legal Defense Fund, Inc. v. Slater, 986 F. Supp. 1169, 1195-96 (N.D. Iowa 1997) (noting that a NEPA environmental

assessment legitimately included considerations of parking, traffic, visual, and public safety impacts).

### D. The Condition Precedent Went Unmet And No Express Contract Was Formed

By definition "if a contractual duty is subject to a condition *precedent*, that condition must be satisfied before the duty arises." Consumers Energy Co. v. U.S., 65 Fed. Cl. 364, 371 (2005) quoting Landmark Land Co. v. United States, 256 F.3d 1365, 1376 (Fed. Cir. 2001) (emphasis in original). Williston notes that "because a promisor's duty does not become absolute unless and until a condition precedent occurs, the absence or nonoccurrence of a condition is a defense to an action brought against the promisor for breach of the promise." 13 Williston on Contracts § 38:7 (4th ed.). This defense arises even against a party who has "relied substantially" upon the expectation of a contract. Essen Mall Properties v. U.S., 21 Cl. Ct. 430, 441 (1990) ("The policy favoring freedom of contract requires that, within broad limits, the agreement of the parties should be honored even though forfeiture results.").

The NEPA process at issue in this case ended in a determination of no action by the DOE, an outcome foreseeable at the beginning of the process. This conclusion did not satisfy the provisions of the easement that require successful completion of NEPA review. Because such completion was a condition precedent to the formation of a contract between DOE and MNS Wind, and that condition was not met, no contract between the two entities was formed.

In general, an agency's actions are limited by regulation while an EIS is pending. 40 C.F.R. § 1506.1. MNS Wind confronted no similar limits upon its affairs; prudence was its only safeguard. The company, in preparing for a project with mere provisional approval, ran the risk that its efforts might be wasted. It cannot now justifiably claim the shelter of an imaginary

contract.

## III. MNS Wind Impermissibly Attempts To Use Estoppel To Bind DOE

In its complaint, MNS Wind styles as "estoppel" its argument that DOE cannot deny that the parties' easement formed a contract. Compl. ¶¶ 68-78. The law recognizes two forms of estoppel, "equitable" and "promissory." Although MNS Wind does not specify upon which theory it relies, in either case, MNS Wind cannot establish that the Government is estopped from denying the existence of a contract.

Because MNS Wind attempts to use estoppel as a "sword" to establish its assertion that DOE cannot deny the existence of a contract, its estoppel argument is best characterized as "promissory" in nature. See, Gregory v. U.S., 37 Fed. Cl. 388, 396 (Fed. Cl. 1997) (plaintiffs' argument that the "government should be barred from denying the existence of a contract" between plaintiffs and the government gave rise to a promissory estoppel claim). Whether or not MNS Wind can actually prove this claim is irrelevant, however, because this Court lacks jurisdiction to consider claims of promissory estoppel. Sinclair v. U.S., 56 Fed. Cl. 270, 281 (Fed. Cl. 2003) (noting that this Court "has no jurisdiction over claims for promissory estoppel, as it requires the finding of a contract implied-in-law against the Government, for which there has been no waiver of sovereign immunity."). Accordingly, this Court should find it lacks jurisdiction to consider MNS Wind's estoppel claim.

Even if MNS Wind's claim could be characterized as "equitable estoppel," MNS Wind cannot establish a right to recovery. The threshold is high for establishing an equitable estoppel claim against the government. See, e.g., United Pacific Ins. Co. v. Roche, 401 F.3d 1362, 1366 (Fed. Cir. 2005) (noting that "the Government may not be estopped on the same terms as any

other litigant," quoting Heckler v. Cmty. Health Servs., 467 U.S. 51, 60 (1984)). To prove its claim, MNS Wind must show "some form of affirmative misconduct" upon behalf of the government. Zacharin v. U.S., 213 F.3d 1366, 1371 (Fed. Cir. 2000).

MNS Wind claims, based solely upon "information and belief," that DOE officials knew of and intentionally withheld information about the Air Force's concerns with the project before entering into the easement, allegedly with the intent of reaping some supposed political benefits from the agreement. Compl. ¶ 73-74. Yet the Air Force itself did not truly "know" of its national security concerns until it completed a study of the problem in connection with the preliminary draft EIS. App. 78; see App. 79. DOE cannot reasonably be charged with withholding information that the Air Force itself did not even "know" until its analysis of the problem was complete. Moreover, throughout the NEPA review process, MNS Wind was informed about the Air Force's concerns, was working to address and satisfy those concerns, and knew not later than April, 2002, that the entire project was "on hold" pending review of the Air Force concerns. App. 69-71, 73, 80-85. Thus, any "affirmative misconduct" claim, and with it any equitable estoppel claim in this case, must fail.

Nor can MNS Wind legitimately complain that DOE acted in bad faith. In general, if the occurrence of a condition precedent is entirely within the control of one of the parties, that party has a "duty to act in good faith and with reasonable efforts to bring about its occurrence." N.L.R.B. v. General Teamsters Union Local 662, 368 F.3d 741, 745 (7th Cir. 2004).[5] Here, the

---

[5] This duty should be distinguished from the duties of good faith and fair dealing binding parties to a contract, which MNS Wind asserts the Government violated. Compl. ¶¶ 50-67. The duties of good faith and fair dealing arise for the Government only when it enters into a contract. Renda Marine, Inc. v. U.S., 66 Fed. Cl. 639, 648 (Fed.Cl. 2005) ("implied duties of good faith and fair dealing 'do[ ] not form the basis for wholly new contract terms, particularly terms which

pre-contract condition requiring NEPA finality went unsatisfied. MNS Wind claims that this lack of finality resulted from a want of good faith upon DOE's part. Compl. ¶¶ 63-65. If DOE failed to act in good faith, then bad faith must be written into the agency's regulations, because DOE followed both the letter and spirit of the rules that bound it. In particular, the agency complied faithfully with NEPA, consulting with relevant parties and preparing a preliminary draft EIS that considered a range of alternatives, among them no action. That the agency official charged with making the final NEPA decision chose an alternative disfavored by MNS Wind does not suggest, let alone establish, that the agency acted in bad faith.

---

would be inconsistent with the express terms of the agreement,'" quoting Jarvis v. United States, 43 Fed.Cl. 529, 534 (1999)). See, e.g., Zyla v. Wadsworth, Div. of Thomson Corp., 360 F.3d 243, 252 (1st Cir. 2004) (no duty of good faith and fair dealing exists independent of an existing contract; applying Minnesota law); Centigram Argentina, S.A. v. Centigram Inc., 60 F. Supp. 2d 1003, 1013 (N.D.Cal. 1999) (same; applying California law). Accordingly, MNS Wind's claim that the Government violated its duties of good faith and fair dealing is misplaced; because there was no contract, the Government had no such duties.

## CONCLUSION

For the reasons given above, we respectfully request the Court to grant our motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

OF COUNSEL:
Sharon Hejazi
Paul Michael
Office of Counsel
Department of Energy

October 4, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on October 4, 2005, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" and "APPENDIX" were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Bryant G. Snee
BRYANT G. SNEE

**APPENDIX**