IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MNS WIND COMPANY, LLC, a Delaware limited liability company<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF ENERGY, NATIONAL NUCLEAR SECURITY ADMINISTRATION, NEVADA OPERATIONS OFFICE, an agency of the United States government<br><br>Defendant. | CASE NO. 04-1569C<br><br>(JUDGE WOLSKI)<br><br>DECLARATION OF THOMAS WILLIAMS IN SUPPORT OF MNS WIND COMPANY LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**DECLARATION OF THOMAS WILLIAMS**

I, Thomas Williams declare as follows:

1. I am currently the Executive Director of the Research Foundation at the University of Nevada, Las Vegas. I was formerly the Program Manager at the Nevada Operations Office, National Nuclear Security Administration ("NNSA"), Department of Energy ("DOE"). In this capacity I reported directly to the Manager of the Nevada Operations Office, Ms. Kathleen Carlson. I have personal knowledge of the matters stated herein, and if called as a witness would testify competently thereto. I submit this Declaration in Support of MNS Wind Company LLC's ("MNS") Opposition to Defendant's Motion to For Summary Judgment.

2. As the Program Manager, I was responsible, for among other things, providing guidance and oversight to the local NNSA staff in the local implementation of DOE's community reuse program activities, including the consideration of the wind farm proposal at the Nevada Test Site ("NTS").

3. As Program Manager, I was also involved with the DOE's oversight of and compliance with the National Environmental Policy Act ("NEPA") process.

4. During the NEPA process, the United States Air Force ("USAF") reiterated its longstanding concerns about the wind farm's potential to adversely impact national security. In an attempt to address these concerns, I personally arranged meetings between representatives of the USAF and United States Senator Harry Reid's office to determine whether there was any way to overcome these concerns.

5. After high level discussions between the USAF and Senator Reid's Office, the USAF concluded that national security concerns would not allow the project to continue.

6. As I described in my declaration in Support of MNS's Motion for Partial Summary Judgment, thereafter, I met with Ms. Carlson to discuss how the DOE would terminate the wind farm project. During this meeting, I informed Ms. Carlson that Senator Reid's office had expressed the strong desire that the DOE compensate MNS for the termination of the wind farm project. During this meeting, Ms. Carlson also related to me that the Administrator of the NNSA, General John Gordon ("General Gordon") also supported compensation to MNS for it's investment in the wind farm. There was never any discussion that the DOE would claim that the Easement did not come into effect because MNS did not satisfy the NEPA process. Indeed, it was my understanding that the termination for national security reasons would specifically require what the parties had negotiated -- a revocation of the Easement by the DOE through eminent domain.

7. During this same meeting, I advised Ms. Carlson how the DOE could implement the Easement, and compensate MNS. I told Ms. Carlson that the DOE had the discretion and the authority to complete the NEPA process with a Record of Decision ("ROD") that recommended

a "No-Action" alternative. I told her that under this option, the DOE would recommend that the decision-maker, General Gordon, approve the "No Action" alternative as provided for in the Draft Environmental Impact Statement ("EIS"), and complete the NEPA process. I further informed her that this would complete and satisfy NEPA, implement the Easement, and require that the DOE terminate the Easement for national security concerns through eminent domain as provided in the termination provision in the Easement. At the conclusion of this meeting, Ms. Carlson informed me that she would proceed with this option, and make the recommendation to General Gordon that he approve the "No Action" alternative, which would complete and satisfy the NEPA process and implement the Easement.

8. I have reviewed the July 3, 2002 memorandum from Ms. Carlson to General Gordon that was part of the Government's Appendix to its Motion for Summary Judgment. After reviewing the July 3, 2002 memorandum, it appears that Ms. Carlson followed my advice, and initially decided to complete the NEPA process with a "No Action" decision. In her July 3, 2002 memorandum to General Gordon, Ms. Carlson recommended that he "[A]pprove the 'No Action' recommendation to implement the easement allowing development of a wind farm at NTS." In addition, just as we had discussed, Ms. Carlson recommended that General Gordon "select the 'No Action' alternative in the Draft Environmental Impact Statement for the proposed wind farm at the NTS and conclude the National Environmental Policy Act process for this project." Tellingly, nowhere in her memorandum to General Gordon did Ms. Carlson discuss "terminating" the NEPA process and asserting that the Easement would not become effective.

9. I have subsequently learned, however, that Ms. Carlson did not follow through with the "No Action" alternative. I have reviewed a July 12, 2002 letter that Ms. Carlson sent to the NTSDC in which Ms. Carlson does not make any reference to the "No Action" alternative we

discussed and that she recommended to General Gordon in her July 3, 2002 memorandum (which General Gordon approved). Instead, in her July 12, 2002 letter, Ms. Carlson appears to have changed courses and claims that General Gordon had "decided to terminate the NEPA process" and that the Easement would not go into effect according to the terms of the agreement, thus in effect, disavowing the national security revocation clause negotiated by the parties. I was surprised by this action which seemed to be contrary to both my discussion with Ms. Carlson about the DOE implementing a "No Action" alternative, and the good faith agreement that my DOE colleagues and MNS negotiated to mitigate the financial effect of a National Security taking which was always possible, but provided for in the agreement as a contingency.

10. I have reviewed the Government's Motion for Summary Judgment, and I disagree with the Government's assertion that the DOE adopted the "No Action" alternative as recommended in Ms. Carlson's July 3, 2002 memorandum to General Gordon. Instead, as reflected in Ms. Carlson's July 12, 2002 letter to the NTSDC, the DOE stated that it had decided to "terminate" the NEPA process, and therefore the Easement would not go into effect. I have also reviewed the DOE's public statement in the Federal Register regarding the NEPA process. The DOE's statement in the Federal Register is consistent with Ms. Carlson's July 12, 2002 letter in that it claims the NEPA process was "terminated." Nowhere in the DOE's statement in the Federal Register is it indicated that the DOE was taking a "No Action" alternative under the Draft EIS.

11. It also is my understanding that the DOE still has not compensated MNS for its revocation of the Easement. I am embarrassed by the DOE's refusal to compensate MNS for the revocation of the Easement, and believe that the DOE has disavowed its specific agreement.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 14th day of November 2005, at Las Vegas, Nevada.

Thomas Williams

CERTIFICATE OF FILING

I hereby certify that on November 21, 2005, a copy of the foregoing Declaration of Thomas Williams in Support of MNS' Opposition to Defendant's Motion for Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Bryant Delgadillo