IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MNS WIND COMPANY, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | CASE NO. 04-1569C<br><br>(Judge Wolski)<br><br>**MNS WIND COMPANY, LLC'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Court's Rules, Plaintiff, MNS WIND COMPANY, LLC, respectfully submits that the following response to Defendant's Proposed Findings of Uncontroverted Fact:

1. This case arises from a proposal by a private entity to install electricity generating wind turbines on the Nevada Test Site ("NTS"), which was formerly used for nuclear weapons testing. Compl. ¶¶ 1, 3-4. The NTS is federally owned property managed by the National Nuclear Security Administration ("NNSA"), an agency of the United States Department of Energy ("DOE"). The NTS is located approximately 60 miles northwest of Las Vegas, Nevada, and is surrounded on three sides by the United States Air Force National Testing and Training Range. App. 11; see App. 12.

**PLAINTIFF'S RESPONSE:** Disputed. The proposal to develop a wind farm at the NTS was initiated by the Nevada Test Site Development Corporation ("NTSDC"), not MNS. *See* Declaration of Tim Carlson ("Carlson Decl."), filed with MNS' Motion for Partial Summary

Judgment, ¶ 9. In June 2000, the NTSDC, on behalf of the DOE approached MNS with a proposal to develop a commercially viable renewable energy production facility on the NTS. *Id.*

2. DOE has partnered with a private corporation, the Nevada Test Site Development Corporation ("NTSDC"), for the purpose of encouraging economic development on the NTS. App. 2. In March 2000, NTSDC approached M&N Wind Power with a development proposal. Compl. ¶ 3. M&N Wind Power in turn formed a company, MNS Wind Company, LLC, to undertake the project. Compl. 6. After negotiations, DOE and NTSDC signed an agreement in December 2000, giving NTSDC a conditional easement to allow MNS Wind to construct wind turbines on the NTS. App. 3. NTSDC then signed a subeasement, subject to the terms and conditions of the primary easement with MNS Wind. Compl. ¶ 24; App. 44.

**PLAINTIFF'S RESPONSE:** MNS disputes that the DOE granted a "conditional easement." The Easement was binding and irrevocable once signed. Indeed, prior to executing the Easement, the DOE's chief counsel, Bud Bornhoft, understood that the use of a non-revocable document for an extended term, such as an easement, was essential in order to secure the agreement of MNS. *See* Declaration of Bryant S. Delgadillo ("Delgadillo Decl."), filed with MNS' Motion for Partial Summary Judgment, Ex. C; Declaration of Thomas Williams ("Williams Decl."), filed with MNS' Motion for Partial Summary Judgment, ¶ 9.

3. The primary easement between DOE and NTSDC was made conditional upon DOE's review of the project under the National Environmental Policy Act ("NEPA"). App. 13, 37. The NEPA process for the turbine project began with a draft Environmental Assessment ("EA"). App. 58. In response to this draft, EA, DOE received comments from various interested parties

and other agencies, including the Air Force. App. 59-60. These comments prompted DOE to undertake a more rigorous review process under NEPA, called an Environmental Impact Statement ("EIS"). App. 61-62. Over the course of the EA and EIS processes, the Air Force sought more precise information from MNS about the technical specifications and the precise geographical locations for each of its proposed wind turbines. App. 63-73.

**PLAINTIFF'S RESPONSE:** Disputed. The Easement was made conditional upon the conclusion of the NEPA process, but the selection of any of the alternatives (including the "No Action" alternative) available under the EIS and the DOE's own NEPA procedures, would have concluded and satisfied the NEPA process and required the DOE to revoke the Easement pursuant to the national security provision in the Easement. *See* Declaration of Thomas Williams in Support of MNS' Opposition to the Government's Motion for Summary Judgment ("Williams Opposition Decl."), at ¶ 7.

4. Once it had the information it required, the Air Force conducted a study and determined, by June, 2002, that wind turbines on the NTS would conflict with air Force testing and training activities in and around the proposed site. App. 74-75. After the Air Force's concerns were finalized, DOE manager Kathleen Carlson recommended to the Administrator of NNSA, General John Gordon, that the "no action" alternative identified in the preliminary draft EIS be approved. App. 76-77. General Gordon accepted Ms. Carlson's recommendation, and adopted the alternative, cancelling the project under NEPA, and precluding the easement and subeasement from coming into effect. App. 76-77.

**PLAINTIFF'S RESPONSE:** MNS does not dispute that Ms. Carlson recommended to the Administrator of NNSA, General John Gordon, that he approve the "no

action" alternative identified in the draft EIS. MNS also does not dispute that General Gordon accepted Ms. Carlson's recommendation, and approved the "no action" alternative. MNS does dispute, however, that the "No Action" alternative approved by General Gordon cancelled the NEPA process. In fact, the reverse is true. In the July 3, 2002 memorandum from Ms. Kathleen Carlson (the Manager of the NNSA) to General Gordon, Ms. Carlson recommended that General Gordon "[A]pprove the 'No Action' recommendation *to implement the easement* allowing development of a wind farm at NTS." *See* Government's Appendix ("App.") at 76 (emphasis added). Ms. Carlson further recommended that General Gordon "select the 'No Action' alternative in the Draft Environmental Impact Statement for the proposed wind farm at the NTS and *conclude* the National Environmental Policy Act process for this project." App. at 76 (emphasis added).

The DOE believed that approval of the "No Action"would complete the NEPA process. *See* Williams Opposition Decl., at ¶ 7. Indeed, Ms. Carlson was expressly advised that a "No Action" recommendation would complete and satisfy NEPA, implement the Easement, and require that the DOE terminate the Easement for national security concerns through eminent domain as provided in the termination provision in the Easement. *Id.*

Apparently recognizing that the "No Action" alternative would in fact conclude the NEPA process, and require the DOE to compensate MNS pursuant to the Easement, the DOE attempted to undo and disregard its initial decision. Rejecting General Gordon's decision to approve a "No Action" decision, conclude the NEPA process, and implement the Easement as set forth in the July 3rd memorandum, on July 12, 2002, the DOE instead sent a letter to the NTSDC, that asserted because of possible "major impacts to National Security," the DOE had decided to "*terminate* the NEPA process" and that the Easement would not go into effect

"according to the terms of the agreement." Carlson Decl. ¶ 27 (emphasis added); Williams Decl. ¶ 18; Undisputed Fact, No. 12. The DOE claimed "the National Security impacts identified by the Air Force [at the Nevada Test Site] are so significant that further action with respect to the NEPA process is unwarranted." Therefore, the "development of the project will not be allowed to go forward." Carlson Decl. ¶ 27; Undisputed Fact, No. 12.

In addition, the DOE never published a Record of Decision implementing the "No Action" alternative as would normally occur when a federal agency approves an action recommended in an Environmental Impact Statement. Instead, in its final public statement regarding the NTS wind farm project, the DOE issued a statement *withdrawing* its notice of intent to prepare an EIS for the NTS. *See* 68 F.R. 1448-01, 2003 WL 69209 (Jan. 10, 2003). In the Federal Register, the DOE withdrew its prior announcement that it was preparing an EIS for the wind farm at the NTS. *Id.* The DOE also repeated statements in Ms. Carlson's July 12, 2002 letter as the basis for its decision to withdraw the notice of intent. The DOE stated in the Federal Register that:

> "the Administrator of the NNSA [General Gordon] decided *to cancel consideration* of the wind farm proposal on the NTS due to potentially significant adverse impacts to national security missions of the U.S. Air Force at the Nevada Test and Training Range . . . Therefore, further proceedings of the preliminary draft EIS, which was under review in NNSA, is no longer warranted. The notice of intent to prepare an EIS is *withdrawn* and the NEPA process is hereby *terminated*." (emphasis added).

*Id.* Nowhere in the Federal Register does the DOE mention or refer to General Gordon's approval of the "No Action" alternative.

5. Throughout the NEPA review process, MNS Wind was informed about the Air Force's concerns, was working to address and satisfy those concerns, and knew not later than

April, 2002, that the entire project was "on hold" pending review of the Air Force concerns. App. 69-71, 80-85.

**PLAINTIFF'S RESPONSE:** Disputed. From the time the Easement was executed in December 2000 until the DOE "terminated" the NEPA process, MNS, in good faith reliance on the DOE's promises, spent valuable resources performing various tasks to develop the project. *See* Declaration of Michelle Conway ("Conway Decl."), filed with MNS' Motion for Partial Summary Judgment, ¶ 9. MNS did not know that the Government would violate the EIS and its own NEPA procedures by refusing to accept alternatives specified in the EIS, and thereby breach its Easement with MNS and intentionally interfere, in bad faith, with the NEPA condition which did not permit the "termination" of the NEPA process. Finally, the Government's action also violated the "No Action" alternative specified in the EIS and the July 3rd memorandum which would have implemented the Easement and required revocation as provided in Part II, ¶E(1) of the Easement.

Dated: November 21, 2005

s/ George T. Caplan
George T. Caplan, Counsel of Record
KAYE SCHOLER LLP
1999 Ave. of the Stars, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1285
*Attorneys for Plaintiff*
*MNS Wind Company, LLC*

CERTIFICATE OF FILING

I hereby certify that on November 21, 2005, a copy of the foregoing Response to Defendant's Proposed Findings of Uncontroverted Fact was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Bryant S. Delgadillo