IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MNS WIND COMPANY, LLC<br>a Delaware limited liability company<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) | No. 04-1569C<br>(Judge Wolski) |

**DEFENDANT'S REPLY TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States, through its undersigned attorneys, hereby provides its reply to Plaintiff's "Proposed Findings of Uncontroverted Fact In Support Of Plaintiff's Opposition to Defendant's Motion For Summary Judgment" under Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"):

1. After high level discussions between the United States Air Force ("USAF") and Senator Reid's Office, the USAF concluded that national security concerns would not allow the project to continue. See Declaration of Thomas Williams in Support of MNS' Opposition to the Government's Motion for Summary Judgment ("Williams Opposition Decl."), at ¶ 5.

Defendant's response:

**Disagree.**

**Basis for the objection:** The Air Force did not decide that the wind turbine project would not continue. As part of the NEPA process, the Air Force provided DOE with information that revealed a conflict between the project and the Air Force's mission. App. 74-75. DOE then

elected the "no action" alternative found in the EIS.

**Proposed revision:**

The Air Force conducted a study of the MNS turbine project and determined, by June 2002, that wind turbines on the NTS would conflict with Air Force testing and training activities in and around the proposed site. App. 74-75. After the Air Force's concerns were finalized, DOE manager Kathleen Carlson recommended to the Administrator of NNSA, General John Gordon, that the "no action" alternative identified in the preliminary draft EIS be approved. App. 76-77. General Gordon then approved this "no action" alternative. App. 77.

2. Thereafter, Mr. Williams met with Ms. Kathleen Carlson, the DOE Manager of NNSA Nevada Operations Office, to discuss how the DOE would terminate the wind farm project. Id. at ¶ 6.

Defendant's response:

**Disagree.**

**Basis for the objection:** Ms. Carlson does not recall such a meeting. Carlson Decl. ¶ 6.

**Proposed revision:**

None. Even if such a meeting happened, it is irrelevant to the interpretation of the Easement's NEPA provisions.

3. During this meeting, Mr. Williams informed Ms. Carlson that Senator Reid's office had expressed the strong desire that the DOE compensate MNS for the termination of the wind farm project. Id. Ms. Carlson also informed Mr. Williams that the Administrator of the NNSA,

General John Gordon ("General Gordon") similarly supported compensation to MNS for its investment in the wind farm. Id.

Defendant's response:

**Disagree.**

**Basis for the objection:** The intent of Senator Reid's office has no bearing upon the interpretation of the Easement. Further, Ms. Carlson did not tell Mr. Williams that either she or General Gordon "supported compensation to MNS for its investment in the wind farm."

**Proposed revision:**

General Gordon, who elected "no action" on the wind farm proposal, did not express to Ms. Carlson an intention that MNS receive compensation following the "no action" election. Carlson Decl. ¶ 5. Instead, General Gordon merely stated that if such compensation were due, DOE would comply. Id.

4. Mr. Williams advised Ms. Carlson how the DOE could implement the Easement, and compensate MNS. Id. at ¶ 7. Mr. Williams told Ms. Carlson that the DOE had the discretion and the authority to complete the NEPA process with a Record of Decision ("ROD") that recommended a "No Action" alternative. Id. Mr. Williams also told her that under this option, the DOE would recommend that the decision-maker approve the "No Action" alternative as provided for in the Draft Environmental Impact Statement ("EIS"), and complete the NEPA process. Id. Mr. Williams further informed her that this would complete and satisfy NEPA, implement the Easement, and require that the DOE terminate the Easement for national security concerns through eminent domain as provided in the termination provision in the Easement. Id.

Defendant's response:

**Disagree.**

**Basis for the objection:** First, whatever Mr. Williams may have told Ms. Carlson about terminating the NEPA process is irrelevant because (a) Ms. Carlson's intent in recommending "no action" is irrelevant to interpreting the meaning of the Easement's NEPA provisions, and (b) Ms. Carlson herself affirms that she never possessed any intent to effectuate the Easement. See Carlson Decl. ¶ 6. Second, Ms. Carlson recalls no such conversation with Mr. Williams. Id. Third, even if Mr. Williams did advise Ms. Carlson about the appropriate way to end the NEPA process, Ms. Carlson would have ignored such advice as beyond Mr. Williams' area of responsibility and expertise. Id.

**Proposed revision:**

None. Mr. Williams' purported actions and statements leading up to the termination of the NEPA process are irrelevant.

5. On July 3, 2002, Ms. Carlson sent a memorandum to General Gordon, in which she recommended that General Gordon "[A]pprove the 'No Action' recommendation *to implement the easement* allowing development of a wind farm at NTS." See Government's Appendix ("App.") at 76 (emphasis added). Ms. Carlson further recommended that General Gordon "select the 'No Action' alternative in the Draft Environmental Impact Statement for the proposed wind farm at the NTS and *conclude* the National Environmental Policy Act process for this project." App. at 76 (emphasis added).

Defendant's response:

**Disagree.**

**Basis for the objection:** MNS distorts the meaning of Ms. Carlson's memorandum.

**Proposed revision:** On July 3, 2002, Ms. Carlson sent a memorandum to General Gordon, in which she recommended that General Gordon "[A]pprove the 'No Action' recommendation to implement the easement allowing development of a wind farm at NTS." App. 76. This memorandum did not suggest that DOE intended to "implement" the Easement. Instead, the memorandum, once signed, terminated the NEPA process and prevented the Easement from coming into effect.

6. General Gordon "approved" Ms. Carlson's recommendation, and authorized the "No Action" alternative by countersigning the July 3, 2002 memorandum. App. at 77.

Defendant's response:

**Agree.**

7. The DOE never published a Record of Decision implementing the "No Action" alternative as would normally occur when a federal agency takes an action recommended in an Environmental Impact Statement. Williams Opposition Decl., ¶ 10.

Defendant's response:

**Disagree.**

**Basis for the objection:** Mr. Williams is not a NEPA expert, and he misstates the applicable NEPA procedures.

**Proposed revision:**

Because DOE elected "no action," the agency declined then to file a Record of Decision, which is required only when an agency decides to "take action." 10 C.F.R. § 1021.315(b).

8. Instead, in its final public statement regarding the NTS wind farm project, the DOE issued a statement withdrawing its notice of intent to prepare an EIS for the NTS. See 68 F.R. 1448-01, 2003 WL 69209 (Jan. 10, 2003). In the Federal Register, the DOE also repeated the statements in Ms. Carlson's July 12, 2002 letter as the basis for its decision to withdraw the notice of intent. The DOE stated in the Federal Register that:

> "the Administrator of the NNSA [General Gordon] decided *to cancel consideration* of the wind farm proposal on the NTS due to potentially significant adverse impacts to national security missions of the U.S. Air Force at the Nevada Test and Training Range . . . Therefore, further proceedings of the preliminary draft EIS, which was under review in NNSA, is no longer warranted. The notice of intent to prepare an EIS is *withdrawn and* the NEPA process is hereby *terminated*." (emphasis added).

Nowhere in the Federal Register does the DOE mention or refer to General Gordon's approval of the "No Action" alternative. Id.

Defendant's response:

**Disagree.**

**Basis for the objection:** Again, MNS distorts DOE's actions following the termination of the NEPA process.

**Proposed revision:**

Following DOE's election of "no action," DOE withdrew its notice of intent to prepare an EIS. See 68 F.R. 1448-01, 2003 WL 69209 (Jan. 10, 2003). This action was entirely consistent with DOE's election of "no action."

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s David M. Cohen
DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

OF COUNSEL:
Sharon Hejazi
Paul Michael
Office of Counsel
Department of Energy

December 22, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on December 22, 2005, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Bryant G. Snee

BRYANT G. SNEE