IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MNS WIND COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1569 |
| | ) | (Judge Wolski) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO**
**MNS WIND COMPANY'S SUPPLEMENTAL BRIEF**
**IN RESPONSE TO THE COURT'S OCTOBER 31, 2006, ORDER**

Pursuant to the Court's October 31, 2006, Order, we respectfully respond to MNS Wind Company's ("MNS") Supplemental Brief, filed on November 28, 2006. In its October 31, 2006, Order, the Court directed the parties "to file supplemental briefs addressing whether the potential interference of the proposed wind turbines with the Air Force's radio frequency transmissions is a factor that may properly be considered under the National Environmental Policy Act (NEPA)." MNS has failed to respond meaningfully to the Court's Order. Instead of addressing whether an agency *may* consider the effects of radio frequency interference, MNS has submitted a brief concerning whether an agency *must* consider such interference. That is, the authority cited and discussed by MNS addresses a question — whether an agency's decision not to address an impact during the NEPA process — different than the question raised by the Court.

The question MNS has briefed is irrelevant. As we demonstrated in our previous filings and our response to the Court's October 31, 2006, Order, NEPA gives Federal agencies broad discretion to consider a wide range of environmental impacts associated with major undertakings. DOE acted squarely within that discretion in considering the effects of electromagnetic interference resulting from MNS's proposed wind turbine project. Moreover,

MNS's assertion that the true cause of DOE's actions was national security misses the mark. MNS's project would have affected the physical environment surrounding the Nevada Test Site, and this impact would, in turn, affect national security. As we showed in our previous filings and below, this causal chain falls within the ambit of NEPA. In short, DOE acted within its discretion, and the Easement, by its terms, never came into effect. Accordingly, MNS has no right to judicial relief, its motion for summary judgment should be denied, and our motion for summary judgment should be granted.

## ARGUMENT

### A. MNS Fails To Show That DOE Acted Outside The Scope Of NEPA

MNS's response to the Court's October 31, 2006, Order flatly misstates the reach of NEPA. MNS asserts that "NEPA precludes an analysis of purely non-environmental issues such as interference with radio frequency transmissions and potential impacts on 'national security.'" Pl. Br. 3. This is simply wrong. NEPA does not preclude an agency from analyzing anything; in fact, it confers upon agencies broad discretion to consider a wide range of impacts resulting from proposed Federal actions. See 40 C.F.R. § 1508.8; see also 40 C.F.R. § 1508.14 (noting that "[w]hen an environmental impact statement is prepared and economic or social and natural or physical environmental effects are interrelated, then the environmental impact statement will discuss all of these effects on the human environment."). MNS misconstrues this law, and its analysis should be rejected.

Moreover, MNS offers no authority that interference with radio frequency transmissions is a "non-environmental" issue. MNS appears to rest upon the assumption that the electromagnetic spectrum is not part of the physical environment because it is invisible, or that

interference is beyond the scope of NEPA because radio waves are “man-made.” Pl. Br. 6. MNS overreaches. MNS proposed to build wind turbines that would interfere with the Air Force’s transmissions across the electromagnetic spectrum. Although invisible, these transmissions were not metaphysical. They are not the equivalent of risk, “unrealized in the physical world,” which the Supreme Court has found too tenuous to support standing under NEPA, as we discuss more fully below. See Metropolitan Edison Company v. People Against Nuclear Energy, 460 U.S. 766, 775 (1983). Further, agencies are unequivocally empowered pursuant to NEPA to consider the “degree to which the proposed action affects public health or safety.” 40 C.F.R. § 1508.27. In short, DOE’s consideration of electromagnetic interference was entirely proper under NEPA.

MNS relies principally upon two cases, Metropolitan Edison and Western Radio Services Company, Inc. v. Espy, 79 F.3d 896 (9th Cir. 1996), to support its cause. Pl. Br. 4-8. These cases do not, in fact, further MNS’s position. In Metropolitan Edison, the Supreme Court held that the Nuclear Regulatory Commission (“NRC”) was not required to consider, pursuant to NEPA, effects upon the “psychological health and community well-being” of residents near the Three Mile Island nuclear power plant, which NRC had proposed to reopen. Metropolitan Edison, 460 U.S. at 779. The Court focused its analysis upon the “closeness of the relationship between the change in the environment and the ‘effect’ at issue.” Id. at 772. The Court noted that direct effects of the nuclear project included “release of low-level radiation, increased fog . . . and release of warm water into the Susquehanna River,” effects that the NRC considered in its Environmental Impact Statement (“EIS”). Id. at 775. Psychological health damage, the Court found, was an indirect effect caused by the risk of a nuclear accident, not by a physical effect on

the environment.[1] Id. at 775. Accordingly, the Court found that the petitioners had no cognizable cause of action under NEPA.

Metropolitan Edison does not support MNS's position for two reasons. First, the case says nothing about the environmental factors an agency may consider under NEPA. To be sure, the Supreme Court in Metropolitan Edison sought not to impose an expansive, burdensome reading of "physical environment" upon Federal agencies, id. at 776, but the opinion does not prohibit agencies from imposing such a burden upon the themselves. As we demonstrated in our response to the Court's October 31, 2006, Order, agencies have construed NEPA broadly in their regulations, to include, for example, the "ecological . . . aesthetic, cultural, economic, social, or health" effects of their actions. 40 C.F.R. § 1508.8; see, e.g., Lee v. United States Air Force, 354 F.3d 1229, 1240-45 (10th Cir. 2004) (considering, under NEPA, the effect of Air Force flyovers upon, among other things, land values and livestock). Second, Metropolitan Edison actually undercuts MNS's position because of its acknowledgment that the "release of low-level radiation" is a physical effect under NEPA. Metropolitan Edison, 460 U.S. at 775. The electromagnetic interference at issue in this case would be the direct result of MNS's wind turbines, much like the radiation in Metropolitan Edison — both are invisible, but both undeniably affect the physical environment.

MNS's reliance upon Western Radio is no more availing. The plaintiff in Western Radio challenged a decision by the Forest Service to issue a permit for the construction of a building and tower that would cause interference with plaintiff's radio communications. Western Radio, 79 F.3d at 898-99. The court found that the plaintiff lacked standing to bring suit because its

[1] The Court explained that "risk is, by definition, unrealized in the physical world." Id.

alleged harm, which was "purely economic," fell outside the zone of interests protected by NEPA. Id. at 902-03. The court distinguished an earlier case, Port of Astoria v. Hodel, 595 F.2d 467 (9th Cir. 1979), in which the United States Court of Appeals for the Ninth Circuit had found a plaintiff alleging interference with broadcasts did have standing under NEPA because its economic injuries were "'causally related to an act that lies within NEPA's embrace.'" Western Radio, 79 F.3d at 903 (quoting Hodel, 595 F.2d at 476).

Like Metropolitan Edison, the court in Western Radio simply does not address the factors that an agency *may* consider under NEPA, and it is therefore inapposite. Rather, Western Radio addresses whether a party had the right to compel an agency to consider factors it had *elected not* to consider. Moreover, even if we assume that standing pursuant to NEPA is somehow relevant to our case, the facts at issue in our case resemble those in Hodel rather than those in Western Radio. In Hodel, plaintiffs challenged a decision by the Bonneville Power Administration to provide electrical power to an aluminum plant. Hodel, 595 F.2d at 471. The Hodel court confronted a range of plaintiffs, from the Port of Astoria, which claimed economic injury due to, among other things, a loss of tax revenue, to a broadcasting company concerned with electrical interference. Id. at 475-76. The Court found the Port of Astoria's economic injury to be beyond the scope of NEPA, but it found the electrical interference complained of by the broadcasting company — interference which was the "the immediate and direct result of the building of the Alumax plant, an action that 'will have a primary impact on the natural environment'" — to be cognizable under NEPA. Id. at 476.

The Western Radio court distinguished Hodel because the project in Western Radio was not alleged to "have a primary impact on the natural environment," i.e., it was not a major

federal action requiring compliance with NEPA. Western Radio, 79 F.3d at 903. In our case, there is no dispute that MNS's project was a major federal action of the sort that mandated the NEPA process. In short, Western Radio and Hodel, strictly speaking, are irrelevant to the analysis necessary here, which is whether DOE acted within its discretion when it included electromagnetic interference as a factor in its NEPA analysis. At most, these cases stand for the proposition that certain plaintiffs are unable to compel an agency to consider factors that the agency had elected not to consider under NEPA. None of these cases support the proposition that it was unlawful for DOE to decide to include electromagnetic interference in its NEPA analysis here.[2]

**B. MNS's National Security Argument Remains Irrelevant**

MNS takes advantage of the Court's October 31, 2006, Order to rehash its primary argument that its project was terminated because of national security concerns, not environmental concerns. Pl. Br. 8-13. This national security nexus, MNS claims, entitles it to compensation pursuant to a clause in the Easement. Pl. Br. 11-12. This argument was without foundation in MNS's opening briefs, and it remains unsupported.

In the first instance, MNS misconstrues the facts when it asserts that the Court is wrong in assuming that DOE terminated the wind turbine project because of interference with the Air

[2] The same is true of the other cases cited by MNS, Douglas County v. Babbit, 48 F.3d 1495 (9th Cir. 1995), and Breckinridge v. Rumsfeld, 537 F.2d 864 (1976). In Douglas County, the court found that preparation of an EIS was unnecessary where the agency was designating habitat as critical for purposes of the Endangered Species Act; the physical environment was actually preserved by the action, not changed. Douglas County, 48 F.3d at 1505-1507. Likewise, in Breckinridge, the court found that NEPA was irrelevant to an Army base closure, which had no "primary impact" upon the environment. Breckinridge, 537 F.2d at 866. Both of these cases concerned whether NEPA was applicable at all, not whether an agency acting within the scope of NEPA in preparing an EIS was forbidden from analyzing particular factors.

Force's radio frequency transmissions. Pl. Br. 8. The draft EIS shows that DOE considered such interference in its analysis. See App. 6. Moreover, MNS makes a distinction with no difference in its argument that DOE terminated the wind turbine project for national security reasons. As we demonstrated in our response to the Court's October 31, 2006, Order, DOE acted within the confines of NEPA in considering the effects of wind turbines on the electromagnetic spectrum as it was used by a surrounding land user. See Def. Br. 4-7. MNS cites no authority for the proposition that the electromagnetic spectrum is not part of the physical environment. To the contrary, in our supplemental brief filed on November 28, 2006, we provided the Court with a dozen examples of agencies including potential electromagnetic interference in their respective NEPA analyses. Def. Br. 4-6. That DOE considered the effects of interference on Air Force operations was perfectly appropriate under NEPA, which allows for the consideration of a broad range of effects. See 40 C.F.R. § 1508.8. Finally, as we pointed out in our response to MNS's motion for summary judgment, the Easement's revocation clause is irrelevant because the Easement never came into effect. See Defendant's Response, November 21, 2005, at 2-6.

In short, MNS offers no real argument that DOE's actions here were anything short of proper. MNS, accordingly, has failed to establish its right to any remedy.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant our motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street
Washington, D.C. 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

OF COUNSEL:
Sharon Hejazi
Paul Michael
Office of Counsel
Department of Energy

Sean B. McNamara
Department of Justice

December 12, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on December 12, 2006, a copy of the foregoing "DEFENDANT'S RESPONSE TO MNS WIND COMPANY, LLC'S SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S OCTOBER 31, 2006, ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Bryant G. Snee

BRYANT G. SNEE