IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MNS WIND COMPANY, LLC, a Delaware limited liability company, | ) | CASE NO. 04-1569C |
| | ) | (Judge Wolski) |
| Plaintiff, | ) | |
| v. | ) | **MNS WIND COMPANY, LLC'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE A RESPONSE TO MNS WIND COMPANY'S OBJECTIONS TO EVIDENCE** |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## INTRODUCTION

MNS opposes the Government's December 22, 2006 Motion for Leave to File a Response to MNS Wind Company's Objections to Evidence ("Motion"). As discussed in MNS' Reply Brief, the "examples" of other agencies' NEPA documents that merely mention potential "radio spectrum interference" add nothing of substance to the Court's ***legal*** analysis of "whether the potential interference of the proposed wind turbines with the Air Force's radio waves is a factor that may properly be considered under the National Environmental Policy Act (NEPA)." The fact that other agencies may also be violating NEPA does not absolve the Government of its misconduct here. Nor do these examples constitute precedent of any sort to support the legality of the Government's conduct in this case. To the contrary, it is like a tax-law defendant who submits some other parties' tax returns to support their own interpretation of the tax code (and thus their questionable deductions) – there is simply no precedential value to such "evidence."

Indeed, as discussed in MNS' Reply Brief, the Government's "examples" raise more questions than they answer. For instance, a simple reading of these "examples" does not answer

the following questions that are critical to the Court's analysis in this case: (1) whether the agency had the right to terminate the project for convenience regardless of whether the reason was based upon environmental or non-environmental issues; (2) whether the agency *terminated or cancelled* the proposed project based solely upon potential impacts to "national security;" (3) whether, despite the alleged interference with radio waves, the agency nevertheless "completed" the NEPA process by issuing a final decision; or (4) whether the parties agreed that the federal agency would compensate the private developer if the agency terminated the project for "national security" reasons. Without knowing the answers to these questions, among others, these "examples" are not helpful, cannot be analyzed, and are irrelevant.

Significantly, the Government does not even *attempt* to answer these questions in its Motion. Instead, the Government offers three reasons why this Court should overlook all of these critical questions and consider this "evidence." As discussed below and in MNS' Reply Brief, however, the Court should instead reject the Government's responses and exclude the inadmissible evidence.

## ARGUMENT

The Government argues that the "examples" it attached are not "evidence, " but rather "examples to answer the legal question posed by the Court." Nothing could be further from the truth. In its Reply Brief, the Government argues that these "examples" prove that the DOE acted properly in this case. For example, the Government argues:

> "DOE's treatment of the Air Force's concerns in the DEIS mirrors that of the numerous other NEPA analyses that we identify above. In all of these cases, agencies acting within the broad framework of NEPA have *legitimately* considered the needs of surrounding

land users. Here, DOE's *proper* consideration of the Air Force's serious concerns *legitimately* led to the cancellation of the project."

Government's Reply Brief at 7 (emphasis added).

The Government is attempting to use this "evidence" to justify the DOE's conduct in this case; not to support any legal interpretation it offered in its brief. The "examples" the Government attached are not official administrative rulings or interpretations of that particular agency with respect to the question of whether the potential interference with radio waves was a factor that may properly be considered under NEPA. *See* 5 U.S.C. § 552(a)(1)(D) (requiring an agency to publish in the Federal Register for the guidance of the public any statements of general policy or interpretations of general applicability formulated and adopted by the agency). These documents, which were never published in the federal register, do not reflect that agency's general policy or interpretations of general applicability formulated or adopted by the agency with respect to the legal issue before the Court. Nevertheless, even if these documents were examples of an agency's general policy or interpretations of general applicability (and properly published in the Federal Register), these examples would have no binding precedential force on this Court. *See Snap-on Tools, Inc. v. United States*, 26 Cl. Ct. 1045, 1060 (Aug. 13, 1992) (evidence of an agency's administrative practice on a particular issue are not binding authority).

In addition, the Government argues that an examination of these examples is necessary because "[N]either party found any case law directly on point." As discussed in the two briefs filed by MNS, this statement is simply not true. There is a case directly on point -- *Western Radio Services Company, Inc. v. Espy*, 79 F.3d 896, 903 (9th Cir. 1996) ("Western Radio"). In the Government's Response to MNS' Supplemental Brief, the Government attempted to distinguish *Western Radio* by erroneously claiming that the issue before the Court in *Western*

*Radio* was "whether a party had the right to compel an agency to consider factors it had *elected not* to consider." Government's Response at 5. The Government's argument is wrong.

In *Western Radio*, plaintiff filed a lawsuit alleging that the decision to issue a special use permit for a use that could create potential interference with radio waves violated NEPA. The issue before the Court was whether the plaintiff (Western) had standing to challenge, under NEPA, the special use permit issued by the Government, where the alleged "environmental" impact was potential interference with radio waves. *Id.* at 898. The trial court declined to address plaintiff's NEPA claim, holding that, because plaintiff's alleged injuries (*i.e.*, interference with radio waves) were strictly economic, not environmental, plaintiff lacked standing under NEPA. *Id.* at 899. The Ninth Circuit upheld the trial court's decision.

Thus, the issue before both the trial court and the Ninth Circuit was whether interference with radio waves gave a plaintiff standing to sue under NEPA. The Court was examining the scope of NEPA's reach. *Western Radio* did not address, as the Government claims, whether a party had a right to compel an agency to consider certain factors in its NEPA review, but rather whether interference with radio waves was within the NEPA purview. The holding of the Court in *Western Radio* confirms that interference with radio waves is not the type of injury that NEPA was created to address.

The Government next argues that this Court expressly allowed this type of extrinsic evidence to be submitted and therefore this offering should also be permitted. Government's Motion at 3. This is also not true. While the Court did indicate that "[t]he parties may attach in appendices any additional documents that bear on this particular issue," this did not mean that the parties could submit irrelevant and inadmissible evidence such as that presented by the Government. This is particularly pertinent given the history of this case. In prior submissions to

the Court, neither party had submitted evidentiary documents that had not been previously produced in this case (and so identified by bates label). Accordingly, MNS chose not to object to the admissibility of those evidentiary documents in the context of these motions.[1]

Finally, the Government argues that, even if any of MNS' objections are well-founded, it is within the Court's discretion to take judicial notice of these documents "without regard to admissibility." *See* Government's Motion at 4. This is not the case. Inadmissible evidence is no basis for legal decision-making, especially when the opposing party has objected. *United States v. Bello*, 194 F.3d 18, 24 n.8 (1st Cir. 1999) – upon which the Government relies for this argument – holds only that a judge may consult materials not otherwise admissible in order to take judicial notice under Federal Rule of Evidence 201(g). Indeed, the trial court in *Bello* "was reluctant to take judicial notice" and several times "denied pretrial motions requesting judicial notice." 194 F.3d at 24 n.7. The trial court ultimately took judicial notice that the alleged crime occurred in the United States (a prerequisite for the Court's jurisdiction) based upon otherwise inadmissible maps that "*have not been objected by the defense*." *Id*. n.6 (emphasis added). Here, significantly, the Government *has not even moved* for the Court to take judicial notice of the inadmissible appendices. Moreover, MNS has objected on multiple grounds.

---

[1] The Government's argument that these documents do not constitute hearsay because they were "not offered to prove the truth of the matters they assert" is absurd on its face. Government's Motion at 3. As the Government states elsewhere in its Motion, the Government "provided the Court with 12 examples showing that agencies, as a matter of course, both before and after the NEPA process at issue in this case, have considered electromagnetic interference in NEPA analyses." *Id.* at 2. Indeed, in the Government's Reply Brief, the Government admits that it was offering this evidence to prove that "agencies frequently consider the effects of radio spectrum interference on adjacent land users in NEPA analyses." Reply Brief at 4. Thus, the Government is clearly offering this evidence to prove, as a true fact, that other agencies frequently consider potential interference with radio waves in NEPA and that such consideration is appropriate.

The Government also argues that the appendices are "legislative facts," not "adjudicative facts," and the rules of evidence do not apply. Motion at 4. Legislative facts, however, are more stringently scrutinized than adjudicative facts because they are established truths that apply universally:

> Legislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally, while adjudicative facts are those developed in a particular case.

*United States v. Gould*, 536 F.2d 216, 219-20 (8th Cir. 1976). It is ironic and inappropriate for the Government to assert that the appendices it proffers are legislative facts that apply universally when it is submitting those "facts" as *precedent for a contested legal point*. What the Government actually offered is not a universal "fact," but merely the practice of various agencies to mention potential impacts upon radio waves in the NEPA documents of those agencies. The legality of this practice in each of these "examples" cannot be evaluated nor can the relevance of the actions of these agencies be determined because we cannot compare those "examples" with the unique contractual arrangements present here.

Moreover, the examples that the Government cites in *Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249, 256 n.8 (2006), *San Juan County, Utah v. United States*, 420 F.3d 1197, 1202 n.2 (10th Cir. 2005), and *Consumers Energy Co. v. United States*, 65 Fed. Cl. 364, 369 n.7 (2005), all concern adjudicative facts in the public record upon which judicial notice was taken under Federal Rule of Evidence 201, not "legislative facts" that are established truths that apply universally. Here, the Government has not even moved for judicial notice of the contested appendices. These cases simply do not support the Government's argument in this case.

There is no authority for the Government to submit this "evidence" in violation of the basic rules of evidence. No matter how one couches the terms, contested facts submitted to prove a contested legal point must pass evidentiary muster or they are barred from consideration as a matter of law.

The Government's attempt to have this Court consider a random sampling of other agencies' NEPA documents highlights the weaknesses in the Government's legal interpretation concerning the scope of the NEPA statute and regulations. This is particularly true given that there is a case directly on point that answers this Court's legal question; whether the potential interference with the Air Force's radio waves is a factor that may properly be considered under NEPA. The Ninth Circuit in *Western Radio* has resolved that question – impacts upon radio waves are not NEPA considerations by statute or regulation.

Moreover, in this case the Government *terminated* the NEPA process based solely upon this non-environmental impact. The Government has never cited any authority that supports its *termination* of the NEPA process based solely upon non-environmental impacts, such as potential impacts on radio frequency transmissions. The Government's decision to cancel the NEPA process based solely upon a potential "non-environmental" impact is particularly damaging here, given that it is undisputed that the Government agreed to compensate MNS if the Government decided to terminate the wind farm project for national security reasons. As discussed in MNS' Opening Summary Judgment Brief at 17-19, the Government terminated the NEPA process based solely upon non-environmental national security concerns and prevented the completion of the NEPA process in order to avoid the specific national security termination provision negotiated by the parties. The Government could not legally do this under *Western Radio* or under the contractual agreements negotiated by the parties in this case.

**CONCLUSION**

For the reasons discussed above, this Court should deny the Government's Motion and exclude the inadmissible evidence.

Dated: January 10, 2007

s/ George T. Caplan

George T. Caplan, Counsel of Record
KAYE SCHOLER LLP
1999 Ave. of the Stars, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1285
*Attorneys for Plaintiff*
*MNS Wind Company, LLC*

CERTIFICATE OF FILING

I hereby certify that on January 10, 2007, a copy of the foregoing MNS' Response to Defendant's Motion for Leave to File a Response was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Bryant S. Delgadillo